## KUHN v. MC KAY.

PLEADING — VARIANCE — WAIVER OF VARIANCE — DAMAGES, MEASURE OF — EVIDENCE — BREACH OF AGREEMENT TO DELIVER CORPORATE STOCK — NECESSITY OF DEMAND — STATUTE OF LIMITATIONS — PREJUDICIAL ERROR — INTEREST UPON UNLIQUIDATED DEMAND.

1. Under a petition alleging an indebtedness in a certain amount for the balance due upon the purchase price of certain mining property, and that defendant promised to pay the

same in shares of stock in a mining corporation, but that he had failed and refused to deliver the stock, and had by his own acts rendered it valueless, and praying judgment for the amount of such alleged indebtedness, proof that the contract of defendant was to deliver to plaintiff the shares of stock regardless of their value, in completion of the payment of the purchase price, rather than to pay a certain fixed amount in such shares, is not a material variance, where the answer of defendant sets out the contract as proven, since the statute provides that no variance between the allegation in a pleading and the proof shall be deemed material, unless it has actually misled the adverse party to his prejudice (Rev. Stat., Sec. 2642).

2.  Nor does it amount to a failure of proof as defined in Sec. 2644 Rev. Stat., which provides that when the allegation of a pleading is unproved in its general scope and meaning it shall not be deemed a case of variance, but a failure of proof.

3.  A party can not complain of a mere variance between pleading and proof unless he has been actually misled to his prejudice in maintaining his action or defense upon the merits, and unless, if he has been so misled, that fact is proven to the satisfaction of the court.

4.  Where the variance is such that an amendment to conform the pleading to the proof would have been proper, the judgment will not be disturbed because no formal amendment was made.

5.  Upon breach of an agreement to deliver shares of stock as part of the purchase price of certain property, the measure of damages is the actual value of the stock.

6.  The measure of plaintiff's damages being the actual value of certain shares of corporate stock, evidence that the defendant purchased from a witness one hundred shares of stock in the same company for the sum of five hundred dollars, or at five dollars per share, is sufficient to sustain a verdict placing such a value upon the stock; the defendant offering no denial or explanation of the purchase testified to by the witness, and it not appearing to have been other than an actual and bona fide sale.

7.  Defendant having agreed to deliver certain shares of stock to plaintiff, the fact that the certificate thereof was not issued for two years and a half after the time fixed for delivery, and defendant stated to plaintiff, at a time when the latter requested the stock, that he would get it as soon as issued,

and afterward made a like statement to plaintiff's attorney, and no objection was made that the demand for the stock was not made at the proper place, and no condition as to place of delivery being attached to such statements, constituted a waiver of a formal demand at the place originally fixed for delivery.

8. A contract was made in Utah for the sale of mining property in Wyoming to defendant under which a deed was placed in escrow to be delivered upon certain conditions. The contract was to terminate upon a fixed date. Nothing was done up to that time to complete the sale, and the deed was returned to vendors. Subsequently a deed was executed conveying the property to defendant, who then executed a bond to secure the vendors for a re-conveyance of the property on or before a certain date, and if no such re-conveyance was made, defendant by his bond was obligated to pay the purchase price, the amount of which was determined by reference to the former contract made in Utah. The bond was signed by defendant and was executed in Wyoming. The first contract was signed only by the vendors, and not by defendant. Held, in a suit brought for the balance due upon the purchase price, that as a new deed was delivered to defendant in Wyoming, and he there entered into an obligation to pay for the property if he retained it, the cause of action arose in Wyoming and not in Utah.

9. Part payment of the money portion of the consideration for the sale of certain property within four years before the commencement of a suit to recover the balance due upon the purchase price, and the written acknowledgment or promise of the defendant within the same period, that plaintiff would get certain shares of stock comprising part of the consideration, as soon as it was issued, which was afterward issued, had the effect to start anew the statute of limitations — even if the Utah statute applied which barred an action upon a contract obligation after four years, and whether the Utah statute contained a provision to that effect or not unless it expressly provided to the contrary.

10. In the absence of statutory provisions to the contrary, part payment of a demand operates as an acknowledgment of the continued existence of the demand which will take it out of the statute of limitations.

11. Plaintiff's measure of damages being the value of certain corporate shares of stock, and the only evidence of value being that the value was $2,500, the admission of testimony

by the plaintiff that he claimed as due him for the stock "$2,500 as to what the stock was worth then," was not prejudicial, although the questions and testimony in reference thereto were immaterial.

12.  Error, if any, in the admission of parole testimony relating to an agreement between the parties for the sale of mining property, and in a ruling that plaintiff was not required to produce the written agreement for the reason that it was not in the jurisdiction of the court, was cured by the subsequent introduction of the written agreement, since under the instructions it can not be held that the jury considered the verbal statements of the witnesses in determining what the contract was.

13.  Some of the oral testimony of certain witnesses being proper, such as related to the par value of stock to be delivered, the execution and delivery of the deed to certain mining property, and the place of delivery, a motion to strike out all of the testimony of such witnesses relating to the sale and the agreement therefor on the ground that the agreement was in writing is too broad and indefinite, and was therefore properly overruled.

14.  The admission of testimony which, although immaterial, could not by any possible presumption have influenced the verdict, is not prejudicial error.

ON PETITION FOR REHEARING.

1.  It is the general rule that interest is not allowable on unliquidated damages; the reason of the rule being that the person liable does not know the amount of his indebtedness, and can therefore be in no fault for delaying payment.

2.  A clear exception to such general rule is that where a demand is based upon market values, susceptible of easy proof, though unliquidated until the particular subject of the demand has been made certain by agreement or proof, interest is allowable, because such a demand is not so uncertain that no default can be predicated upon delay in payment.

[Decided July 7, 1897. Rehearing denied December 15, 1897. Commenced in District Court April 28, 1894.]

ERROR to the District Court for Sweetwater County. Hon. JESSE KNIGHT, Judge.

This was an action brought by George Mc Kay against Adam Kuhn to recover a balance alleged to be due upon

the sale of certain mining property. The action was originally instituted in the District Court for Fremont County, and was taken on change of venue to Sweetwater County. The case was tried to a jury, and a verdict returned for the plaintiff, his damages being assessed at $3,786.66. Judgment was rendered upon the verdict, and defendant prosecuted error. The material facts are stated in the opinion.

*Evans & Rogers*, for plaintiff in error.

If Kuhn failed to deliver the stock as agreed, the remedy of Mr. McKay would be by personal action for damages, caused by breach of the contract. (2 Schouler on Pers. Prop., 571; Newmark on Sales, 398; Benj. on Sales (6th ed.), 870; 21 Ency. L., 612.) This was not an action for damages, but was in the form of a count in *indebitatus assumpsit*. The evidence signally fails to sustain the averments of the petition. One state of facts was alleged, and an entirely different state of facts proven. A plaintiff can not declare on one theory and recover on another. The stock was to be delivered at Ogden, Utah, and no demand was ever made there for the stock. The contract having been made at Ogden, Utah, it was to be performed there. (Bish. on Contracts, 1391.) Kuhn was not bound to send or carry the stock elsewhere than Ogden, the place of delivery as agreed upon. (Benj. on Sales (6th ed.), 679; 2 Schouler on Pers. Prop., 384; Newmark on Sales, 228; Story on Sales, 300, 301.)

Where the vendee has paid the consideration (as McKay had) and the vendor for that consideration agrees to deliver a specific quantity of goods or stock at a future day (as Kuhn had), and fails to deliver, the damages for the failure or breach are calculated upon the value of the goods or stock; thus, upon the breach of an agreement to pay in a particular species of paper, as stock, or bank or other notes, recovery can be had only of the value of such stock or paper. (Barnes v. Brown, 130 N. Y., 372; Robinson v. Noble, 8 Peters, 181; Bank

v. Bank, 16 Wallace, 483; R. R. Co. v. Benedict, 10 Gray, 212; Dwyer v. Rich, 1 Metc., 180; Banks v. Reese, 26 Pa. St., 143; Cummings v. Dudley, 60 Cal., 383; Fosdick v. Green, 27 Ohio St., 484; Safely v. Gilmore, 21 Iowa, 588; Hixon v. Hixon, 7 Humph., 33; Porter v. B. B. R. R. Co., 32 Me., 539; Murray v. Stanton, 99 Mass., 345; Green v. Sizer, 40 Miss., 530; Kirtland v. Molton, 41 Ala., 548; Marr v. Prother, 3 Met., 196; Brooks v. Hubbard, 3 Conn., 58; 2 Sutherland on Damages, Pars. 659, 660.)

The cause of action arose in Utah, and was barred by the statutes of Utah, and so of Wyoming. (Rev. Stat. Wyo., Sec. 2379; Horton v. Horner, 16 Ohio, 145; Webster v. Davis (Neb.), 62 N. W., 482; Wernse v. Hall, 101 Ill., 423; 13 Am. and Eng. Enc., 769; Wood's Limitation of Actions, 20, 21; Hyman v. Bayne, 83 Ill., 256; Bemis v. Stanley, 93 Ill., 230; Lloyd v. Perry, 32 Iowa, 144; Librecht v. Wilcoxon, 40 Iowa, 93; Thompson v. Read, 41 Iowa, 48; Penfield v. R. R. Co., 134 U. S., 351.)

The opinion or conclusion of the plaintiff as to his claim and what he was entitled to receive, was not competent testimony; it left it to the witness to determine the rule or measure of damages. (Blair v. R. R. Co., 20 Wis., 276; Montelius v. Atherton, 6 Colo., 224; R. R. Co. v. Budlong, 10 How. Pr., 289; Lincoln v. R. R. Co., 23 Wend., 425; Clark v. Baird, 9 N. Y., 183; Joyce v. Ins. Co., 45 Me., 168.) It was error not to require the production in evidence of the written contract. The error was not cured by the subsequent admission of the writing, since the oral testimony was not stricken out.

*C. C. Hamlin* and *Clark & Breckons*, for defendant in error.

Whatever construction may be given to the two written contracts, it is clear that if they provided for the delivery of the stock at Ogden, they were subsequently modified by the parties themselves. Kuhn both verbally and in

writing assured Mc Kay that the stock would be delivered to him, and he did not say that he could get the stock by sending to Ogden for it.   When demand was made Kuhn did not refuse delivery because of the place of demand, but because only that it was not issued.   Demand at Ogden would have been fruitless.

While it is true that the form of the petition seems to indicate that the plaintiff relied upon an implied promise to pay the value of the stock, and not on damages for failure to deliver, it is also true that the facts established by the evidence are set forth in the petition, and by the latter the defendant was clearly notified of plaintiff's claim.   Amendments even after judgment are allowable to make the pleadings correspond to the proof.   The court will presume the proper amendment to have been made.   There was sufficient proof of value of the stock. As to rule in absence of proof of value, see 2 Sutherland on Damages, p. 392; Thomas v. Dickenson, 12 N, Y., 364; Kershman v. Lediard, 61 Barb., 573.   In the absence of any proof as to market value the par value should be recovered.

The Utah statute of limitations does not constitute a defense, because; 1, the delivery of the stock was not to be made in that State; 2, if the contract called for delivery in Utah it was subsequently modified; 3, Kuhn promised in writing to deliver the stock within less than four years; 4, he made partial payment within four years. Partial payment or written acknowledgment of a demand starts anew the statute of limitations.   (Rev. Stat. Wyo., Sec. 2381.)   As to unwritten as well as written laws of other States, the presumption is that the same is the law of the forum in the absence of evidence to the contrary. (Stark v. Olson, 37 Neb.; Smith v. Mason, 41 Neb.; Healey v. R. R. Co., 57 Mo. App., 675; Wikerscham v. Johnson, 104 Cal., 407; Scroggin v. Mc Clelland, 56 N. W., 208; Bierhaus v. Co., 8 Ind App., 246; Amer. Oak Leather Co. v. Standard Gig Saddle Co., 9 Utah, 87; Hilburn v. Harris. 21 S. W., 572 (Tex.); Roehl v.

Portius, 47 La. Ann., 1582, 18th Southern, 645; Caval-
laro v. Co., 110 Cal., 348; 42 Pac., 918; Bank v. Laing,
49 N. W., 414 (S. D.); Osborne v. Blackburn, 78
Wis., 211.)

It is impossible to tell from the record upon what peti-
tion the case was tried.   The petition is clearly shown to
have been amended.   The record does not show an
amended petition.   Where an amended answer has been
filed, the original answer can not be resorted to to explain
the allegations of the amended answer.   (32 N. Y.
Supp., 1127.)   Upon the record the court is not in a
position to tell what the amendments to the petition were.
There is nothing, therefore, to determine.   (Rinard v.
Gardner, 31 Pac., 134; Gardenshire v. Same, 37 Pac.,
813; Randall v. Kalbfus, 17 Atl., 238; County v. Miller,
40 N. E., 447; Miller v. Whitaker, 33 Ill., 386; Van
Meter v. Love, 29 Ill., 448; County v. Cooper, 62 N.
W., 1084; Elliotts App. Pro., 596; Company v. Rader,
38 N. E., 341.)   The verdict is not in the record.   It
should have been.   (Lasseter v. Simpson, 3 S. E., 244.)
It does not appear that the motion for new trial was filed
in time.

*Evans & Rogers*, for plaintiff in error, on petition for
rehearing.

Interest is not recoverable upon an unliquidated claim
for damages.   (Mansfield v. R. R. Co., 114 N. Y., 331;
Clark v. Dutton, 69 Ill., 521; Coburn v. Booming Co.,
72 Mich., 134; Roberts v. Proir, 20 Ga., 561.)

· *Clark & Breckons*, contra.

Although the point made on the petition for rehearing
was waived because not discussed in the original brief of
plaintiff in error, the position taken by counsel is not
sound in its application to this case.   Interest was neces-
sary to complete indemnity.   It was properly allowed.

(1 Suth. on Damages, 174, 611, 612; 26 Wis., 295; 49 N. Y., 303; 33 Cal., 117.)

The defendant below knew the exact amount of stock he had contracted to deliver, and also the market value thereof.

POTTER, JUSTICE.

In this case the defendant in error, George McKay, brought suit against Adam Kuhn, the plaintiff in error, to recover a balance of $2,500 and interest alleged to be due upon the purchase price of certain mining property situated in Fremont County in this State, sold by the former to the latter. By the allegations of the amended petition the indebtedness was averred to have existed on the 21st day of May, A. D, 1888, and that the plaintiff in error, who will for convenience be referred to as the defendant, then promised to pay the same in non-assessable stock of the Hub Gold Mining Company, a corporation duly organized and existing under the laws of the State of Massachusetts, and doing business in the State of Wyoming. It was further alleged that the defendant had neglected and refused to deliver said stock, but that in the year 1893 he had, as the result of a suit instituted by him in 1892 against said company for the recovery of $25,000, caused the entire property of said company to be sold to Edward Rosenbaum, who had become the assignee of the judgment obtained by the defendant in said suit. That thereby the stock in said company had become valueless. The prayer of the amended petition was for judgment for said amount, with interest from June 25, 1891.

The answer of the defendant denied any indebtedness, as well as any neglect or refusal to deliver the stock, and alleged that defendant had at all times been, and still was, ready, able, and willing to deliver the same upon the request of the plaintiff. The suit against the mining company, and the sale of its property was admitted; but that the stock had become valueless was denied. As an

affirmative defense it was alleged substantially that the purchase of the property by the defendant occurred under a contract in writing made at Ogden City, Utah, on the 1st day of March, 1887, between defendant and the plaintiff and one James Kime, whereby it was agreed that the purchase price of the property was to consist of $6,000, to be paid to each of the vendors, Kime and Mc Kay, at the office of A. Kuhn & Bro., in Ogden City, Utah Territory, and the delivery to each of said parties of 500 shares of the capital stock, fully paid up and non-assessable, of a mining corporation to be organized on or before July 10, 1887; and it was alleged that said defendant, since the making of said contract, had been and was able and willing to convey to the plaintiff said shares of said capital stock. As a further defense the statute of limitations was pleaded.

In the reply the plaintiff alleged that the agreement set forth in the answer was entered into at Miners Delight, in Fremont County, Wyoming, and that by the terms of said agreement the plaintiff and said Kime had agreed to sell and convey the property described in the answer to the defendant, and on the 21st day of May, 1888, did convey the same by deed, in consideration of which the defendant then and there agreed to pay the plaintiff $8,500 for his share of the property sold, and as part payment agreed to deliver to the plaintiff 500 shares of the capital stock of the Hub Gold Mining Company, fully paid up and non-assessable, of the actual and par value of $5.00 per share, and of the total value of $2,500.

Narrowed down, the issue presented by the plaintiff was that the balance of the purchase price of the property was a fixed sum, which the defendant agreed to pay in stock of the mining company, which he had entirely neglected to do, but had rendered the stock valueless, and hence was still indebted for such balance. The answer of the defendant, on the other hand, controverts the allegation or theory that there was any money liability for such balance, but presents the agreement as one requiring only

delivery on the part of the defendant of 500 shares of the
capital stock of a certain mining company, regardless of
the actual value thereof.

It is insisted that the verdict is not sustained by sufficient
evidence and is contrary to law, for the reason that the
evidence fails to sustain the averments of the petition, and
that if any liability of the defendant is disclosed it is in
the nature of damages for breach of contract, which was
not recoverable in this action, inasmuch as the petition
was in the form of a count in *indebitatus assumpsit;* one
state of facts being averred, and an entirely different state
of facts proven.   The practical effect of this contention is
to charge a fatal variance between the pleading and proof.

The case was tried to a jury, and a verdict returned in
favor of the defendant in error for the sum of $3,786.66,
upon which verdict judgment was subsequently rendered,
motion for a new trial having been duly filed and over-
ruled, to which exceptions were properly preserved.

It appears from the evidence that the agreements be-
tween the parties were reduced to writing, and that until
after the commencement of the trial the written contracts
were in the possession of the defendant below, and were
produced by him upon the trial and introduced in evidence
by the plaintiff.

Plaintiff's exhibit "A," which bears an earlier date
than the other of the two contracts found in the record,
and which is dated March 1, 1887, and was executed at
Ogden, in the then Territory of Utah, after reciting that
Kime and Mc Kay had theretofore executed a deed to
Kuhn, conveying the mining claim in question, and had
placed said deed in escrow at the Commercial Bank of
Ogden, and the time for delivery not having expired and
the conditions of said escrow not having been performed,
and it being the desire of the parties to substitute other
provisions for the delivery of such deed, provides as
follows: "Now it is agreed that said deed shall be
delivered to said Adam Kuhn, and said bank is authorized
so to deliver it on said Adam Kuhn, paying to said parties

of the first part each six thousand dollars, in all $12,000.00, to be paid at the office of A. Kuhn & Bro., Ogden, Utah, and on said Adam Kuhn delivering to each of said parties of the first part 500 shares of the capital stock, fully paid up and non-assessable, of a mining corporation organized or to be organized on or before July 10, 1887, and to include in its property said mining claim." The following clause also appears in said agreement: "And this agreement is to terminate July 15, 1887." This agreement is signed by James Kime and George McKay.

The other agreement is in the form of a bond signed by Adam Kuhn, to which is appended a memorandum signed by the three parties. This instrument is dated May 21, 1888, and according to the undisputed testimony was made and signed at Miners Delight in Fremont County, Wyoming. By its terms Adam Kuhn acknowledges himself bound unto said James Kime and George McKay "in a certain sum of money and a certain sum of stock payable in the office of A. Kuhn & Bro., Ogden, Utah, stated in a certain agreement between the parties hereto, dated March 1, 1887." The condition of the obligation in substance is that if said Kuhn shall on or before the first day of January, A. D. 1889, make, execute, and deliver to said Kime and McKay a good and sufficient deed conveying to them with as good or better title than by him received from them, a certain mining claim therein described, which is the identical claim mentioned in the agreement of 1887, then said obligation is to become void. The memorandum attached to the bond is as follows: "It is understood by the parties hereto that this bond is made for the purpose of securing the said James Kime and George McKay in transferring the property herein described to the said Adam Kuhn for the purpose of applying for patent thereon and making a sale of said mining property, and to bind the said Adam Kuhn to return said property by sufficient deed if said sale is not consummated."

Contemporaneously with the execution of said bond, a

deed for the property was delivered to Kuhn; and, although upon the trial there seemed to be some difference between the opposing parties as to whether it was the same deed which had been placed in escrow or not, I am of the opinion that we must construe the testimony as unmistakably showing that the deed which had been placed in escrow had been returned to the vendors, and that a new deed was executed and delivered. It is, however, probably immaterial whether the deed which was delivered was the same one which had been in escrow or not.

The money part of the consideration, viz., $6,000, or at least the greater part of it, was subsequently paid to the plaintiff by Kuhn, but the first installment thereof was not paid until the spring of 1889, at which time the plaintiff visited Ogden on the invitation of the defendant for the purpose of receiving the money. The remainder of such sum which remained unpaid in 1889 was not paid until the summer of 1891, if, indeed, a small portion of it, at least, did not remain unpaid until 1893, according to the testimony of Mr. Vidal, one of the witnesses for the plaintiff. The shares of stock were not delivered at any time, but were tendered upon the trial.

The plaintiff introduced some testimony for the purpose of establishing the value of the shares of stock which he was to receive, and the court instructed the jury in effect that the plaintiff's right of recovery depended upon a contract whereby the defendant became liable to him for the delivery of certain mining shares; and that they were to find from the evidence the value of such shares; that if they found the shares were never delivered to plaintiff and that he was entitled to receive them, that a contract was made, that it was binding upon the defendant and for a consideration, then the plaintiff was entitled to recover; and that if they found that the plaintiff was entitled to recover under the evidence he would be entitled to recover interest from the time when he should have received the mining stock, upon the amount which

they should find as the value of that mining stock, and that amount must be determined by the evidence in the case.

Upon the entire case as presented by the pleadings and the evidence, this court is asked to declare that there was a fatal variance and for that reason to reverse the judgment.

Upon the subject of variance the provisions of our statute are as follows : " No variance between the allegation in a pleading and the proof shall be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits, and when it is alleged that a party has been so misled that fact must be proved to the satisfaction of the court, and it must also be shown in what respect he has been misled; and thereupon the court may order the pleading to be amended on such terms as are just." (Sec. 2642, Rev. Stat. 1887.)

" When the variance is not material, the court may direct the fact to be found according to the evidence, and may order an immediate amendment without costs." (Sec. 2643, Rev. Stat. 1887.)

" When the allegation of the claim or defense to which the proof is directed is unproved, not in some particular or particulars only, but in its general scope and meaning, it shall not be deemed a case of variance within the last two sections, but a failure of proof." (Sec. 2644, Rev. Stat. 1887.)

A careful consideration of the pleadings and the proof in this case has convinced us that there is not a failure of proof as defined in Section 2644. With regard to the materiality of the variance between the allegations of the petition and reply, and the evidence, it is to be remarked that the plaintiff in error did not aver upon the trial that he was misled, as is required under the provisions of Section 2642; and inasmuch as the contract in the particular respect wherein the proof differed from the allegations of the petition and reply was set out in the defendant's

answer, and the contracts were in the possession of the defendant and produced by him upon the trial, we can hardly conclude that he was, in fact, misled. It was indeed stated during the trial, by counsel for the defendant below, that they were taken by surprise by an amendment made in the morning immediately preceding the trial, which amendment seems to have consisted only of a change in date, and on account of which alleged surprise an adjournment was taken to permit the defendant to procure the contract, which he had for some reason failed to bring with him; but during the entire proceedings, so far as the record discloses, not the slightest intimation was made that they were misled in the respect to which it is now claimed there was a variance.

The par value of the stock which was agreed to be delivered was not stated in either written agreement, but the testimony conclusively establishes the fact that it was thoroughly understood between the parties that such par value was to be $5 per share. The amended petition treats the contract as has perhaps already been. suggested as one to pay a balance of $2,500 in 500 shares of such stock, while the answer admitting the contract to deliver the shares and that the delivery of such shares constituted a part of the agreed purchase price of the property, denied that they were to be taken as a substitute or as an equivalent for a fixed or certain sum of money and controverted the idea and allegation of any certain money liability in the first instance. It is to be observed that this conflict between the defendant's and plaintiff's pleadings constitutes the alleged difference between the allegations of the petition and the reply on the one hand and the proof on the other. This being so, in view of the answer of the defendant, which sets forth the fact in this respect in accordance with the evidence, we are unable to say that he was prejudiced. Crane v. Ring, 48 Kan., 61; Herman v. Hecht (Cal.), 48 Pac., 611; Crothers v. Acock, 43 Mo. App., 318; Stokes v. Brown et al., 20 Or., 530; Stearns v. Reidy, 135 Ill., 119; Pope v. Allis, 115 U. S., 363; Yennke v. Daegling, 52 Wis., 498.

In Pope v. Allis, supra, the court in its opinion say:
"The answer of the plaintiffs in error denied that the
contract provided for the delivery of the iron in Milwaukee,
averred that the iron was to be delivered at Copley. We
do not think that the evidence offered by defendant in
error, which tended to establish the averments of the
answer rather than of the complaint, was such a variance
as could mislead the plaintiffs in error to their prejudice
in maintaining their defense upon the merits. But, if
they had been really misled they should have proved the
fact to the satisfaction of the court upon the trial. Having
neglected to do this, they can not now complain." That
case arose in Wisconsin, and the point was decided under
a statute similar to our own.

Both parties in the case at bar concede the purchase of
the mining property. That purchase the record shows
was actually consummated by the execution and delivery
of a deed on May 21, 1888, the time alleged in the
petition. Both parties in their pleadings conceded and
the contrary is not now asserted, that Mc Kay was to
receive a further consideration for the sale than the sum
of $6,000 provided to be paid in money; and it is like-
wise admitted that the additional consideration was to
consist of 500 shares of stock in a certain mining com-
pany, the plaintiff below insisting by his pleadings that
the stock was in lieu of a certain sum of money agreed
upon as the balance of the purchase price, which was
denied by the defendant. The suit was brought to recover
the balance of such purchase price. The proof, which
rested entirely upon the evidence offered on behalf of the
plaintiff, seems to sustain the averments of the answer
respecting the point of difference alluded to, and the rule
of damages applicable thereto was adopted by the trial
court; viz., that plaintiff could recover only the actual
value of the stock if there had occurred a default in its
delivery. This is the measure of damages contended for
by the plaintiff in error, and he is therefore hardly in a
position to complain.

The case is one in which an amendment might have

been allowed to correspond with the facts proven; such
an amendment would not have amounted to a change in
the cause of action, which was and would have remained
a claim for the balance due upon the purchase of certain
mining property. In such a case the judgment will not
be disturbed because no formal amendment was made.
R. R. Co. v. Caldwell, 8 Kan., 244; Sibila v. Bahney,
34 O. St., 399; Organ Co. v. Lasley, 40 Kan., 521;
1 Encyl. Pl. & Pr., 609; Warder v. Gibbs, 92 Mich., 29;
Enright v. Ins. Co., 91 Mich., 238; Numbers v. Bonser,
29 Ind., 491; Elmore v. McCreary, 80 Ind., 544.

It was held in Sibila v. Bahney, supra, that where the
variance is such that an amendment to conform the plead-
ing to the proof without costs would have been proper, it
can not be deemed so far material as to justify a reversal
of the judgment.

In further support of the contention that the verdict is
not sustained by sufficient evidence, it is urged that the
shares of stock agreed to be delivered are not shown to
have had any value. The evidence upon this point is
meager, nevertheless there is evidence that at the time
when the first installment of the money consideration was
paid, one of the vendors, Mr. Kime, sold to the plaintiff
in error 100 shares of the stock which he was to receive,
for the sum of $500.00, which was also its par value.
Mr. Kuhn offered no denial or explanation of that pur-
chase, and we can only conclude that it was an actual
*bona fide* sale, and we think it sufficient to sustain a ver-
dict placing such a value upon the stock.

It is also insisted that the defendant in error did not
demand the stock at Ogden, at which place only, counsel
contends, the agreement required the delivery. Conceding
that the place of delivery as originally fixed was at Ogden;
in view of the fact that the certificate of stock was not
issued until November, 1891, about two years and a half
after the payment of the greater part of the money con-
sideration, as well as the fact that the plaintiff in error
stated to Mr. McKay at Lander when a delivery of the

stock was requested at that place, that he would get the stock as soon as it was issued, and a like statement contained in a letter written by the plaintiff in error to Mr. Vidal, the attorney for Mr. Mc Kay, in October, 1891, and the fact that no objection was made on the ground that the demand was not made at the proper place, we think it clearly unnecessary that a demand at Ogden should have been shown. The law will not require a useless thing to be done. The plaintiff in error, by his own admissions, did not have the stock at Ogden or at any other place ready to deliver, until so long a time after the obligation to deliver it had matured that it is doubtful at least if when it had been issued the defendant in error would have been required to receive it if he had not desired to do so.

The point is strenuously urged upon our consideration that the action was barred by the statute of limitations, for the reason, as contended, that the cause of action arose in Utah, and in respect to the statute of limitations it is controlled by Sec. 2379 of the Rev. Stat. of 1887, of this State, which provides that if by the laws of the State or country where the cause of action arose the action is barred, it is also barred in this State. The fact that Kuhn had continuously resided in Utah during the period in question was brought out upon cross-examination of the defendant in error, when a witness in his own behalf; and to further establish this particular affirmative defense certain provisions of the Utah statute upon the subject were offered in evidence, and upon objection they were rejected by the court.

That ruling is assigned as error. The statute of Utah so offered in evidence is incorporated in the record, by which it appears that the period for bringing an action upon any contract obligation or liability founded upon an instrument of writing, except those mentioned in a preceding section, is limited to four years. The limitation upon such causes of actions prescribed by the statute of this State is five years. Section 2369, Rev. Stat. Unless

a cause of action arose in some other State or country and it is there barred. If, however, the laws of Utah are not applicable, the action would not be barred under Sec. 2369, for the reason, if no other, that the plaintiff in error was not a resident of this State. (Sec. 2378, Rev. Stat.) In the first place, the action can not be said to be affected by the Utah statute unless the cause of action arose in that State. The first contract, that of March, 1887, was, it is true, executed in Utah, but under that contract no sale of the mining property to which it related was then made, although a deed for such property was in escrow, and by the terms of said contract was to be delivered upon the performance of certain conditions. It was to terminate on the 15th day of July, 1887. Up to that time nothing seems to have been done toward completing the sale; and, as I understand the evidence, the deed which had been in escrow had been returned.

On the 21st day of May, 1888, in this State, the property was conveyed by a deed duly executed and delivered, and at the same time the plaintiff in error, the purchaser of said property, executed a bond to secure the vendors for a return of said property by due and proper reconveyance on or before the 1st day of January, 1889, and if no such reconveyance was made, then the plaintiff in error under his bond was obligated to pay the purchase price, the amount of which was determined by a reference to the contract of March, 1887. It is doubtful, to say the least, whether the plaintiff in error was previously under any obligation whatever to receive the deed which was in escrow, or to pay the money or any other consideration. He had not signed the escrow agreement, had not, at least in writing, agreed to buy the property or pay for it, and it does not appear that he had been placed in possession of the property. A new deed was delivered in May, 1888, and an obligation then entered into by the plaintiff in error to pay the purchase price if he retained the property; the contract, therefore, upon which the liability of plaintiff in error depended was made in Wyoming and

not in Utah. The fact that the escrow agreement was referred to, to determine the precise amount of the purchase price does not, in my judgment, alter the situation. We are, on the other hand, inclined to consider the contract as originally providing for the payment of the money and the delivery of the stock at Ogden, Utah, but do not regard that fact as controlling, for several reasons, some of which have already been stated.

1.   The subsequent voluntary payment of part of the money in Wyoming, and the statement or promise made to deliver the stock as soon as it was issued, without objecting to the place where the request for the stock had been made, or any condition as to place of delivery being attached to such statements, must be held to have operated as a waiver of the necessity for a formal demand for delivery in Utah.

2.   The part payment of the money portion of the purchase price within four years before the commencement of the suit, coupled with the written acknowledgment or promise of the plaintiff in error in October, 1891, that the defendant in error would get the stock as soon as it was issued, together with the further fact that the stock was afterward issued in November, 1891, had the effect of starting the statute of limitations anew, and this would be true whether the statute of Utah contained a provision to that effect or not, unless, indeed, it expressly provided to the contrary, and that we are not required or permitted to presume.

If the writer of this opinion is not mistaken, the statute of Michigan was silent respecting part payment; nevertheless, the courts of that State uniformly held that a part payment operated as an acknowledgment of the continued existence of the demand, which would take it out of the statute of limitations.   Miner v. Lorman, 56 Mich., 212. Such also was the law in respect to acknowledgments as announced by the English Courts, under the original statute of limitations, 21 James 1, although that statute contained no provision concerning them.

The fact that such part payments and written acknowledgments had been made was before the court at the time

of the offer of the Utah statute. Upon either phase of the question, that statute was ineffectual to bar the claim sued upon, and was properly excluded.

The remaining assignments of error relate to the ruling of the court upon matters of evidence, and the refusal of certain instructions to the jury proffered by the plaintiff in error. These we will dispose of in their order. The plaintiff below was permitted to testify that he still claimed as due him for the stock "$2,500 as to what the stock was worth then," and that he claimed interest. It is contended that the reception of such testimony violated the rule against permitting a witness to fix the amount of damages or injury, and allowed the witness to determine the measure of damages. It does not seem clear to me that the testimony went to that extent. The witness was asked what he "claimed" to be due, and if he claimed interest. The questions were doubtless immaterial, but we do not think that the plaintiff in error was prejudiced thereby. The only value of the stock which was testified to was the sum which he stated he claimed. If the jury found that the defendant in error was entitled to recover, they had no evidence of any other value. If the proposition includes the contention that McKay was testifying to the value, and was not a competent witness upon that subject, we suggest that the plaintiff in error had all the advantage before the jury which could be derived from the fact that his knowledge of such values was limited, if, indeed, he had any knowledge at all.

Previous to the introduction of the contracts in evidence some testimony of the defendant in error and the witness James Kime, as associate vendor, had been received upon the subject of the sale of the mining property, and the agreement between the parties. Upon the disclosure that such agreements had been reduced to writing, it was discovered that they were not within the jurisdiction of the court, whereupon it was ruled that it was unnecessary for the defendant in error to produce them. This is assigned as error. Contrary to the view of counsel, we think the

error, if any, was cured by the subsequent introduction of the written agreements, as under the instructions of the court it can hardly be held that the jury considered, in determining what the contract was, the verbal statements of the witnesses. It is true that a motion was made to strike out all of the testimony of those witnesses relating to the sale and the agreement, which motion was over-ruled, but the motion as made was too broad and indefi-nite. Some of the testimony relating to the sale and the agreement was entirely proper, such as the par value of the shares of stock to be delivered, the execution and delivery of the deed, and the place of its delivery. It does not seem possible, moreover, that the testimony respecting the agreement, in so far as it may have con-flicted with the terms of the written contract, could have resulted in any prejudice to the plaintiff in error in any view of the propositions upon which the case was finally submitted to the jury.

Objection is taken to the ruling of the court with reference to certain testimony of the witness Vidal, who, as an attorney for the defendant in error, had entered into some negotiations by letter with the plaintiff in error for a settlement, and was employed to demand payment of the amount claimed to be due. In explanation of the settlement which was made, which included some of the payments made upon the purchase price of the property, he was permitted at the outset, over the objection of counsel for the plaintiff in error, to state the amount which it was determined should be demanded. The fact of the demand was competent. His statement was that the amount found due and demanded was $4,000, includ-ing an amount for labor, and in addition thereto 500 shares of the mining stock. The trial court held that such statement was preliminary only, and refused, upon motion, to strike it out. We find no prejudicial error in these rulings. He subsequently testified that upon a settlement which was made in his presence, the plaintiff in error had agreed that the amount of money due to the

defendant in error was $3,600, and that a settlement was made on that basis.   While it may be true that so far as such matters affected by the settlement were not connected with the purchase price of the mining property were immaterial, the testimony respecting them could not by any possible presumption have influenced the verdict.

The plaintiff in error submitted several instructions, all of which were refused.   So far as they related to the measure of the damages, they were covered by the charge as given, except the second instruction, as requested, which submitted the proposition that the recovery must be limited to nominal damages.   The refusal of that instruction was not error.   The fourth and sixth instructions related to the alleged bar of the statute of limitations. For reasons already given, it follows that said instructions were improper.   The fifth instruction was to the effect that the place of delivery of the stock would be at the place of making the contract, and that demand must be there made ; that the contract was made at Ogden, and in the absence of evidence showing a demand at that place the plaintiff could not recover.   The propositions involved in this instruction have received attention in an earlier part of this opinion.   For the reasons there given the instruction did not present the law applicable to this case; and for the same reasons the court did not err in refusing to give the seventh and eighth instructions, which defined the agreement of March, 1887, as the contract sued on and under which alone the liability, if any, accrued.

This disposes of all the assignments of error.   A careful investigation of the entire case and the questions involved has failed to convince us that there is any prejudicial error in the record.   The judgment of the district court will be affirmed.

Judge Bramel, of the second judicial district, sat in the place of Mr. Justice Corn, who having been of counsel in the court below, announced his disqualification.

*Affirmed.*

CONAWAY, C. J., and BRAMEL, Dist. J., concur.

Potter, Chief Justice.

The proposition presented on petition for rehearing is that it was error to allow interest upon the value of the shares of stock which constituted the damages which defendant in error was held in the former opinion to be entitled to recover. It is urged, that, as the amount of damages was unliquidated, interest is not recoverable.

It is, no doubt, the general rule that interest is not allowed on unliquidated damages. The reason for the rule is said to be that in such case the person liable does not know the amount of his indebtedness, and can therefore be in no fault for delaying payment. There is a clear recognized exception to the rule, however, well sustained by authority. Demands based upon market values, susceptible of easy proof, though unliquidated until the particular subject of the demand has been made certain by agreement or proof, are not so uncertain that no default can be predicated of any delay in making payment. (1 Sutherland on Damages, 610.) Therefore on such a demand interest is not denied.

The doctrine is stated in McMahon v. N. Y. & E. E. R. R. Co., 20 N. Y., 463, as follows: "The old common law rule, which required that a demand should be liquidated, or its amount in some way ascertained before interest could be allowed, has been modified by general consent, so far as to hold that if the amount is capable of being ascertained by mere computation, then it shall bear interest;" and the court referred to Van Rensselaer v. Jewett, 2 Comst. 135, in which case interest was allowed upon an unliquidated demand, the amount of which could be ascertained by computation, together with a reference to well-established market values.

The same principle is supported by the following cases, among others: Sullivan v. McMillan (Fla.), 19 So., 340; Richards v. Gas Company, 130 Pa. St., 37; Swinnerton

v. Land Co. (Cal.), 54 Pac., 719. We think this case comes clearly within the exception to the general rule. It is true that the evidence concerning the market value of the stock is meager, but so far as it goes, it stands uncontradicted. It was all to one effect. The only competent testimony, perhaps, upon the subject was that which related to a sale of some shares of the same stock by a witness to the plaintiff in error. The price paid upon that sale was the par value. No explanation or denial of the circumstance thus testified to was offered. If the jury had any evidence of value, and we have held that they had, but one valuation was mentioned. By reference thereto the damages were susceptible of ascertainment by computation. The case is not one where contradictory testimony respecting values appears. In such a case it may be that the demand can not be said to be susceptible of easy proof, although based upon market values. (Harvey v. Hamilton, 155 Ill., 377.) For the reasons stated a rehearing must be denied.

BRAMEL, Dist. J., concurs.

The late Mr. Chief Justice Conaway also concurred.