JIMMIE MARKEN,

*Plaintiff and Respondent,*

vs.

EMPIRE DRILLING COMPANY, INC., a Corporation,

*Defendant and Appellant.*

(No. 2701; February 15th, 1956; 293 Pac. (2d) 406)

122

For the defendant and appellant, the cause was submitted upon the brief and also oral argument of Edward E. Murane of Murane & Bostwick, Casper, Wyoming.

For the plaintiff and respondent, the cause was submitted upon the brief and also oral argument of William J. Wehrle and Houston G. Williams, both of Casper, Wyoming.

## OPINION

HARNSBERGER, Justice.

This suit arose because of injuries sustained by Jimmie Marken, plaintiff and now respondent, when he was crushed between a moving truck and a standing truck in the oil fields of Natrona County, Wyoming. The case was tried to a jury which returned a verdict in plaintiff's favor for some $21,000 and judgment was rendered accordingly. The defendant has appealed.

It appears that at the time of the accident the Empire Drilling Company, Inc., defendant and appellant, was hired by plaintiff's employer, Marsh and Pursel, drilling contractors, to move their drilling rig to which plaintiff was assigned as driller. For this operation, defendant was using a Mack truck, driven by one Hensley, a GMC truck, driven by Thompson, and a Ford truck, driven by Nall. The derrick of the drilling rig had been lowered and loaded in a horizontal position, the base or bottom end of the derrick being fastened to and resting upon the bed of the Mack truck which was being driven and operated by defendant's em-

ployee, Hensley, who was in charge of moving the equipment, and the upper or top end of the derrick being fastened to and resting upon the bed of the GMC truck. This type of loading served to couple or hold together as a unit the Mack truck heading in one direction and the GMC truck heading in the opposite direction with the derrick acting as the coupling and making an over-all length of load and trucks approximating one hundred twenty feet. However, only the Mack truck had motive power as the driving axles of the GMC truck were broken, although its motor would run and would operate its air brakes and air horn but the truck could not move under its own power. In consesequence movement of the entire equipment depended solely upon power furnished by the Mack truck. Because of physical conditions, it was necessary that the loaded equipment be first moved backward, that is, by backing the Mack truck. When the driver of the Mack truck attempted to back out, the drive wheels of the Mack truck could not get sufficient traction because they were resting in wet, slippery, drilling mud. In an effort to get moving, the driver started a "rocking" operation, applying power alternately forward and backward but was only able to move about three feet in either direction although this rocking was tried for several minutes. The Fork truck was then backed up in front of the GMC truck and plaintiff and Garrison, another employee of Marsh and Pursel, went between the two vehicles and commenced chaining them together when the GMC truck, being pushed by the Mack truck, started forward and pinned and crushed plaintiff against the rear of the Ford truck.

The plaintiff, inter alia, had pleaded in substance that when plaintiff found the Mack truck unable to back out he told the driver of the Mack truck that he would get help to move the load and "to hold the load"; that plaintiff then directed the Ford truck to back up in

front of the GMC truck and plaintiff and Garrison went between the GMC and Ford trucks to chain them together so as to enable the Ford to assist in moving the load; that without warning the driver of the Mack truck moved the load backward crushing plaintiff between the GMC and the Ford and that this action of defendant's employee was negligent and careless and without warning to plaintiff who was in a position of peril, which fact was known or should have been known to the driver of the Mack truck and that as a direct and proximate result of the carelessness and negligence of defendant, *acting by and through its driver*, plaintiff was injured.

Defendant answered substantially denying the alleged negligence and pleaded contributory negligence on the part of plaintiff.

Defendant took the position that these allegations charged specific negligence and therefore defendant's liability was restricted solely to negligence on the part of Hensley, the driver of the Mack truck. In consequence, at the close of plaintiff's evidence, the defendant filed its motion for a directed verdict, insisting that plaintiff's evidence failed to show Hensley either knew or should have known the plaintiff was in a position of peril when the load was moved backward without warning. The motion was overruled. Whether or not that motion should have been sustained need not be discussed, as appellant concedes that under decisions of this court the motion was waived when defendant thereafter elected to put in its own evidence. Campbell v. Weller, 25 Wyo. 65, 82, 164 P. 881, 885; Boyle v. Mountford, 39 Wyo. 141, 147, 148, 270 P. 537, 539; Hawkins v. Loffland Bros. Co., 70 Wyo. 366, 377,; 250 P. 2d 498, 501, 502. However, after the close of all the evidence, the defendant again moved for a directed verdict and this motion was also overruled. The appellant submits this was reversible error.

The plaintiff's evidence in addition to establishing the factual situation as above summarized had shown that plaintiff's duties required him "to see that the rig is moved—tore down and moved and rigged up without too much loss of time, without too much destruction to the equipment by bad hitches, and so on and so forth," and that the responsibility for movement of the rig after it was loaded upon the trucks was with the defendant; that after the "rocking" operation had continued for several minutes, the driver of the Mack truck got out of the cab and talked the situation over with Marsh and Pursel's tool pusher, Mr. Billingsley, who had supervision of the rig and of its being moved; that the tool pusher decided that they would have to get assistance, it being unclear if he stated this decision to the truck driver, who then returned to his truck; that plaintiff also discussed the predicament with the tool pusher and the need for getting help; that plaintiff then went to within ten feet of the cab of the Mack truck on the side in which the driver was seated with his arm over the door with the window open and told the driver that plaintiff would get some help and "to hold the load"; that plaintiff did not know whether the driver saw him—that he made no response; that plaintiff then went to the rear of the load and directed the Ford truck to back up to within a distance of ten feet of the front of the GMC truck in order that the Ford might be used to help move the load; that the GMC was not moving when plaintiff and Garrison went between the front of the GMC truck and the backed-up Ford truck; that Garrison fastened one end of a chain to the front of the GMC truck and the plaintiff began securing the other end of the chain to the rear of the Ford truck; that Garrison had completed his task and was turning around to help plaintiff, and plaintiff, after dropping his end of the chain over the "end roll" on the rear of the Ford, was in the

act of stooping or squatting down to retrieve the end of the chain in order to complete the fastening, when Garrison noticed the load beginning to move backward; that then Garrison jumped back from between the trucks and hollered a warning to plaintiff; that plaintiff first started to jump from between the trucks, then fearing he might be run over, plaintiff reached up and grasped a part of the "gin pole," mounted on the rear of the Ford truck, in an effort to pull himself out of danger, but before he could get completely out of the way the front of the GMC truck pinned and crushed him against the rear of the Ford truck, resulting in his being seriously and permanently injured, and that there was no horn sounded or hollering or any other warning given plaintiff that the load was being moved backward other than the shouted warning given by his fellow employee *after* the backward movement had started.

Appellant assumes the driver's failure to make response when plaintiff told him "to hold the load" and he would get some help proved the driver had not heard plaintiff and therefore the driver could not be charged with any knowledge which plaintiff's direction might otherwise have imputed to him. But plaintiff's admonition required no response from the driver, except his compliance. Whether or not the driver heard was a question of fact for the jury to decide from its consideration of all circumstances shown by the evidence. Nor did the driver's later testimony, that he had not heard, take away the jury's right to determine the matter. The jury might not be and, in the light of its verdict, evidently was not impressed with the driver's testimony which, of course, could have been influenced by a desire to exculpate himself from fault.

Appellent evidently also assumes that when plaintiff frankly said he did not know whether the driver saw him, this fortified the contention that the driver had

not heard the plaintiff. We see little merit in this, as one may hear without seeing. In any event what has previously been said has equal application in the matter.

In a similar vein it might be observed that defendant's evidence and conclusion that the noise of the Mack truck motor made it probable that the driver had not heard could have been discounted by the jury, particularly as we find no evidence that when the caution was given to Hensley by plaintiff that the motor was running at all. Certainly the driver could not have so credibly testified, as he was maintaining that he did not hear, so would not have known at what time the plaintiff spoke to him.

But appellant has entirely overlooked other very important evidence which the court was privileged to consider when called upon to pass on the motion. The defendant's own witness, the driver of the Mack truck, testified that "a good oil-field hand would have been backing his truck around there in case we didn't get out of the road [mud?]." This plainly indicated the driver's familiarity with a practice which would have made any reasonable person aware and expect that a truck would be "backed up there," to help move the load. This would usually require fastening the helping truck to the load thus calling for someone to go between the vehicles and be placed in a perilous position. With this admitted knowledge on the part of the driver Hensley, coupled with evidence pertaining to the direct caution given the driver by the plaintiff, the court was correct in refusing to direct a verdict as it was the jury's sole province to determine whether the driver of the Mack truck should have known that a condition of peril to someone probably existed and which danger required the giving of adequate warning before he moved the load backward.

It is next claimed the court erred in failing to sustain defendant's objection to the witness Garrison being asked, "Do you know for whom or by whom he was employed," the question having reference to the person who prepared a statement signed by the witness. No objection was made when the question was asked; but when he answered, "No, I don't. All I know, he said he was an insurance adjustor," defendant objected and moved the answer be stricken. This was overruled. As the witness had already testified without objection in answer to previous question that the insurance adjustor had written the statement, we do not feel the defendant was prejudiced by the witness making substantially the same answer to the question to which objection was made.

Appellant also claims that mortality tables were erroneously admitted over objection. This is a little confusing in that no such tables were admitted. From the record it appears that after a fruitless effort to stipulate regarding plaintiff's life expectancy, plaintiff's counsel stated plaintiff would like to introduce the plaintiff's life expectancy as shown by the mortality tables set forth in Wyoming Compiled Statutes, 1945 [5 W.C.S., 1945, p. 341]. Defendant objected and the court said it would rule the tables admissible. Defendant's counsel then said, "If you rule that I will stipulate. * * * Based on the Court's order and this ruling I stipulate that if it was proper the expectancy would be 30 years." Perhaps technically speaking, the mortality tables were not admitted, but no one should deny that defendant's counsel had reason to feel he had preserved his objection to the jury's being given the information which they would have received had the tables themselves been admitted. However, mortality tables are admissible to show life expectancy, 32 C.J.S., Evidence § 719, and the evidence having shown plaintiff's injuries to be permanent, it was proper to show

plaintiff's life expectancy, 25 C.J.S., Damages § 81. In Glover v. Berger, 72 Wyo. 221, 263 P. 2d 498, this court found occasion to approve a doctor's testifying as to the life expectancy of the plaintiff in an action for damages resulting from a battery where the injuries sustained were of permanent character. A mortality table is merely evidence of a different character but tending to establish the same fact and we do not see why it should be subject to a different rule. The mortality tables could properly have been admitted, hence the objection is not well taken. See also Jacobsen v. Howard, 164 Okla. 88., 23 P. 2d 185; Pilch v. Yellow Taxicab Co., 225 Mich. 484, 196 N.W. 365; Fournier v. Zinn, 257 Mass. 575, 154 N.E. 268; Cornell v. Great Northern Ry. Co. 57 Mont. 177, 187 P. 902; City of Shawnee v. Slankard, 29 Okla. 133, 116 P. 803.

Appellant alleges prejudicial error in the giving of Instruction No. 1, which is as follows:

"Plaintiff in this case claims that he was injured by reason of the negligence of defendant, in that defendant's employee Hensley, while the trucks under the supervision and control of defendant were in the positions disclosed by the evidence, caused the Mack and GMC trucks to move, without warning to plaintiff of such movement when defendant's employees knew or by the exercise of ordinary care should have known that *defendant* was in the position he was in. (Italics supplied.)

"Defendant denies any negligence on its part, and claims that plaintiff went in front of the GMC truck while it was being rocked, thus placing himself in a position of danger; that he ignored warnings by defendant; that plaintiff was an experienced oil field worker, knew of the danger, and by reason of his actions he was guilty of contributory negligence and assumed the risk of the injury which he sustained; that plaintiff was also guilty of negligence in directing the Ford truck, driven by Nall, to be placed in the position disclosed by the evidence.

"Plaintiff in his Reply denies the contentions of the de-

fendant and alleges that defendant knew or in the exercise of reasonable diligence should have known of plaintiff's position at the time he was injured, and that defendant could have so operated its trucks as to avoid injury to plaintiff."

Appellant says that the court made "a grievous error in attempting to set forth the issues and that the Court misstated the pleadings and issues by using the plural of the word 'employees' [employee]," where that word last appears in the first paragraph of the instruction. Error is also claimed because the plural of the word "truck" is used as the seventh from the last word in the instruction.

Momentarily passing over the plural use of these words, the instruction otherwise fairly and properly states the issues presented by the pleadings. The plain meaning of the first paragraph is that plaintiff claims he was injured because Hensley, without warning, moved the load, i.e., the GMC and Mack trucks coupled by the derrick. Just how the further statement that "defendant's employees knew or by the exercise of ordinary care should have known that *defendant* was in the position he was in," prejudiced the defendant, we do not see. It seems that all of counsel as well as the court overlooked what seems to us to be a plain mistake—that is, if it was intended to use the word plaintiff instead of the italicized word defendant. But the fact remains, the word defendant was used and being so used, it could not, as appellant claims, have enlarged the pleadings or the issues. Of course, the use of the criticized word "employees" might similarly have been overlooked by all parties and have been merely a typographical error. We have no way of knowing. The record does not disclose to us the grounds advanced by appellant in objecting or excepting to the instruction, as none were stated by the defendant when it filed its exceptions to the instructions and the record does not elsewhere show any other objection being

made. This calls to our attention how unfair to the trial court it is to permit, on appeal, for the first time to state the grounds upon which an objection is made when those grounds were not stated to the trial judge who would then be enabled to recognize the error, if error there was, and to make such suitable correction as he might desire. However, for the other reasons stated, we find the use of the word "employees" as it appears in the instruction does not constitute reversible error. We also find the plural use of the word "truck" was not improper as the evidence shows two trucks were engaged in the movement as both the GMC and the Mack truck were coupled and both moved.

The error ascribed to the giving of Instruction No. 9 has more substance. It reads as follows:

"You are instructed that if you find from a preponderance of the evidence that the defendant, Empire Drilling Company, Inc., was engaged in the moving of a drilling rig for Marsh and Pursel Drilling Contractors, using in such operation three (3) trucks, generally described as a Mack, a G.M.C. and a Ford, and that such trucks were driven by Robert Hensley, Dale Thompson and Gib Nall, and if you further find from a preponderance of the evidence that any one of such drivers was negligent, then the negligence of such driver was the negligence of the defendant, Empire Drilling Company, Inc., and this is true notwithstanding the fact that one *of* more of said trucks was not owned by said defendant." (Italics supplied.)

We might call attention to the further obvious error occurring in the use of the italicized word *"of,"* merely for the purpose of pointing up the possibility that the addition of the letter "s" was after all typographical error only.

If it is conceded that the pleadings limited defendant's liability to only the negligence of its employee Hensley, this instruction goes beyond the issues in the case, and with the exception hereinafter noted should not have been given. Assuming then that the issues

were so narrowed by the pleading and that the instruction was wrongfully given, still we must further inquire, first, if evidence received without objection, served to enlarge the issues sufficiently to have permitted an amendment whether formal or not (see Kuhn v. McKay, 7 Wyo. 42, 57, 58, 49 P. 473, 476, 51 P. 205; Quinlan v. Jones, 27 Wyo. 410, 417, 198 P. 352, 353; Washburn-Bettis Co. v. Surety Co., 38 Wyo. 530, 534, 269 P. 27, 29; Claughton v. Johnson, 47 Wyo. 447, 461, 38 P. 2d 612, 616, 47 Wyo. 536, 543, 41 P .2d 527, 529; Urback v. Urback, 52 Wyo. 207, 231, 73 P. 2d 953, 963, 113 A.L.R. 889; 88 C.J.S., Trial § 381), and second, if appellant has shown the improper instruction to have prejudiced the defendant.

Having pleaded plaintiff's contributory negligence, defendant offered evidence to show that its employee, truck driver Thompson, was "primarily concerned with driving the GMC truck and steering it"; that Thompson was in the cab of the GMC when the truck started moving; that he saw the Ford truck move in front of the GMC truck and stop; that he saw plaintiff and Garrison between the GMC truck and the Ford truck at the time the GMC truck was rocking and that one of them was tying a chain on the GMC bumper and the other was tying it on the back of the Ford; that "just as quick as they started tying the chain onto my (his) truck and Gib Nall's truck (the Ford)," he jumped on the running board and shouted to get out of the way, and honked his air horn, but that plaintiff disregarded these warnings; that the truck continued rocking a little less than a minute from the time he shouted and sounded the air horn until the occurrence of the accident, and it was approximately one minute from the time the men started tying the chain onto the trucks until the accident; that he then jumped back in the cab of the GMC and applied the air brakes; that the Ford had not moved after being backed in front

of the GMC until the accident when the impact moved it forward about six inches and that at the time of the accident Gib Nall the driver of the Ford was in its cab—the evidence not showing whether Nall was looking backward or forward at the time.

In defending against this claim of his contributory negligence, the plaintiff produced evidence tending to show there was no warning shout, except that of plaintiff's fellow employee Garrison; that no horn was sounded nor was any other warning given; that Thompson was not in the GMC cab at all but was standing on the bed of the GMC behind the cab at the "headache" rack.

Under these circumstances, the jury was privileged to consider both the pro and con evidence thus placed before it and their consideration of it was not limited solely to its bearing on defendant's claim of contributory negligence but, equally as well, it was available to the jury for their determination of whether or not it disclosed any negligence on the part of *any* employee of the defendant which was a proximate cause of the accident.

The jury's verdict indicates that it did not believe Thompson's testimony in toto, at least as to that part where he said he sounded the horn and shouted a warning which plaintiff disregarded and that he applied the air brakes of the GMC before the accident but instead that they believed plaintiff's witnesses testifying that no such warnings were given. On the other hand the jury were not compelled to disregard Thompson's own admission that his primary concern was to drive the GMC and steer it, that he saw the Ford in front of his GMC and saw the plaintiff and his fellow worker between the two trucks in a position of danger, so the jury could have concluded that notwithstanding his knowledge of plaintiff's peril, he negligently failed to give any warning or to apply the brakes of his truck,

in an effort to avert the accident. Upon such a premise, the giving of Instruction No. 9 was justified, the principle involved being rather well illustrated in Brandes v. Rucker-Fuller Desk Co., 102 Cal. App. 221, 282 P. 1009, 1012, the quoted portion of which sufficiently explains its applicability, to wit:

" * * * to exculpate themselves from all responsibility for the accident, appellants asserted, and introduced evidence to the effect, that respondent's injuries were proximately caused, not by the careless operation of the automobile by the driver, as alleged and claimed by respondent, but by an agency beyond their control, namely, the sudden breaking of the steering mechanism of the automobile. Therefore, when appellants asserted this new theory and introduced evidence to substantiate it, respondent doubtless had the right to rebut the same, and in furtherance of such right was entitled to show that a defense based thereon was not maintainable because of a failure on the part of appellants to exercise ordinary care in keeping the automobile in a safe condition; and the record discloses that whatever testimony was elicited in this behalf was received without objection. Consequently, *if there were any circumstances developed thereby tending to establish an additional element of negligence on the part of appellants,* respondent was entitled to take advantage thereof and to urge the same, along with the other negligent acts pleaded in the complaint and upon which she relied originally for recovery (Rocha v. Garcia, 203 Cal. 167, 263 P. 238; Gleeson v. Virginia Midland R. R. Co., 140 U. S. 435, 11 St. Ct. 859, 35 L. Ed. 458, cited approvingly and quoted from in Michener v. Hutton, 203 Cal. 604, 610, 265 P. 238, 59 A.L.R. 480) ; and, if that be true, then she was also entitled to have the jury instructed accordingly. For the reasons stated we are of the opinion that the instructions complained of were not erroneous."

We are therefore left unconvinced that under evidence properly admitted the instruction was altogether improper, even though it be conceded plaintiff's original petition pleaded the specific negligence of Hensley, because the evidence referred to disclosed facts and

circumstances indicating negligence on the part of other of defendant's employees which may have been considered to be a proximate cause of plaintiff's injury. Nevertheless it is unnecessary to rest our decision wholly upon this theory alone.

It is stated in 5 C.J.S., Appeal and Error § 1764:

"The giving of instructions which are abstract or not authorized by, or applicable to, the pleadings and evidence will not constitute a ground for reversal, where no prejudice results to the complaining party; and this is so whether or not the instructions state correct rules of law. * * *"

Decisions from courts of thirty-nine states plus those of Federal courts are cited as supporting the foregoing, a great number of which have been examined and found to be in accord with the text. In 3 Am. Jur., Appeal and Error § 1103, it is said that according to the better considered view the question whether the giving of such instructions is reversible depends upon the question of prejudice. So even if we were to assume, notwithstanding what we have previously pointed out, that neither pleadings nor evidence authorized the instruction, we must further ascertain if the complaining party has shown the instruction resulted in prejudice to his substantial rights. We might state here that it is an abstract statement of law to say that negligence of one's servants or employees acting within the scope of their employment is the negligence of their employer (see generally 57 C.J.S., Master and Servant § 555 et seq; 3 C.J.S., Agency § 254 et seq.), and that an instruction stating a correct proposition of law is not necessarily misleading or prejudicial merely because it is inapplicable to the facts in evidence. See 88 C.J.S., Trial § 382; Tenneson v. Kadiak Fisheries Co., 164 Wash. 380, 2 P. 2d 745, 748. Furthermore, our statutes provide, § 3-1705, W.C.S., 1945:

"The court in every stage of an action must disregard any error or defect in the pleadings or proceedings

which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

In Claughton v. Johnson, 47 Wyo. 536, 542, 41 P. 2d 527, 529, this court said with respect to this statute:

"The statute states but a general rule that a cause will not be reversed for error in ruling on pleadings, where appellant was not thereby prejudiced. * * * "

and that the statute

" * * * recognizes the fallibility of human judgment, and contains directions to this court when that appears in the court below. * * * "

May we not then say with reason that though the court may have erred in giving Instruction No. 9 this defect in the proceeding should be disregarded unless we find that it adversely affected the substantial rights of the defendant? The point is rather well noted in City of Oklahoma City v. Meyers, 40 Okla. 686, 46 P. 552, 556, where it was said:

"It is urged that the instructions given by the court below were not applicable to the case on trial, and that the jury was probably misled thereby. It is unquestionably true that a court should instruct only upon such a state of facts as there is some evidence to prove. Abstract questions of law which have no relation to the facts testified to by the witnesses should never be given to the jury as instructions in the trial of a case. But, unless an appellate court can say that a trial judge has given instructions which are not applicable to the case, and which may have misled the jury, the cause should not be reversed. Before the party appealing can demand a reversal he must show his injury. It will not do to send a case back for new trial merely because the trial court may be technically wrong."

While in brief and argument counsel insists defendant was lead by plaintiff's pleading to believe defendant was only called upon to defend against plaintiff's charge that it was negligent only because of Hensley's acts, astute counsel fails to point out in what way defendant was taken unaware by the development in the

evidence of circumstances indicating its negligence because of the acts of its other employees. Counsel should admit that the turn the evidence took resulted from defendant's attempt to prove plaintiff's contributory negligence and grew out of testimony given by defendant's own witnesses. We think we are justified in believing defendant knew what evidence its own witnesses would give and defendant was also alert to the possibilities of its repercussions. Just because this attempt seems to have backlashed to defendant's disadvantage, does not warrant the conclusion that defendant was misled.

Although the giving of Instruction No. E is alleged to be error, appellant says it will not "stress" this specification except to call attention that the instruction stated, "As said elsewhere in these instructions, contributory negligence must contribute as a proximate cause, to the happening of the accident," and appellant says, "Yet, in spite of this reference to the definition of contributory negligence, the Court refused to give Instruction 'H' " as follows:

"YOU ARE INSTRUCTED That contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection and which is a legally contributing cause, cooperating with the negligence of the defendant in bringing about the plaintiff's harm."

As nearly as we can tell, counsel infers that by refusing Instruction No. H the court failed to state elsewhere in the instructions that "contributory negligence must contribute as a proximate cause to the happening of the accident." It is immaterial whether or not it had been "elsewhere" stated in the instructions, e.g., aside from Instruction No. E, that contributory negligence must contribute as a proximate cause to the happening of the accident. Instruction No. E itself said that, in so many words. We must, of course, agree with counsel that defendant was entitled to have the jury instructed as to the effect negligence of the plain-

tiff would have on the outcome of the case if such negligence on the part of plaintiff was a proximate cause of the accident, and we may go even farther and say that the offered Instruction No. H was a proper instruction to have been given. But again, it does not necessarily follow that the failure to give Instruction No. H in this case amounted to reversible error. Other instructions given explained to the jury that the defendant claimed that by reason of placing himself in a position of danger and ignoring warnings, plaintiff was guilty of contributory negligence; that negligence is the want of that care and prudence which an ordinarily careful and prudent person would exercise under all the circumstances of the case and that a failure to do what an ordinarily prudent and careful person would have done under all the circumstances of the case, or the doing of something that an ordinarily careful and prudent person would not have done under the circumstances of the case, is negligence; that negligence in any case is the absence of ordinary care, and in two separate instructions the court told the jury that even though they should find the defendant guilty of negligence which was a proximate cause of the accident, their verdict must be in favor of the defendant if they found that plaintiff was also guilty of negligence which was a proximate cause of the accident. So taking the instructions as a whole as we must, it does not appear that appellant's substantial rights were prejudicially affected. What we have already said disposes of appellant's objections to the giving of Instruction No. Y, and we find no merit in appellant's claim that the verdict of the jury was excessive, much of its position on that question having also been adversely disposed of in connection with other matters hereinbefore discussed.

In conclusion, we feel it cannot properly be said, under all the facts and circumstances appearing from

the record, that any injustice was done the defendant by the verdict and judgment rendered in plaintiff's favor. The judgment is therefore affirmed.

*Affirmed.*

BLUME, C. J., and PARKER, J., concur.