**Fred Andrew GORE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 5406.**

Supreme Court of Wyoming.

May 15, 1981.

Robert B. Denhardt and W. A. Smith, Lander, for appellant.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and John W. Renneisen, Asst. Atty. Gen., Cheyenne, for appellee.

Before ROSE, C.J., RAPER, THOMAS and ROONEY, JJ., and O'BRIEN, District Judge.

ROSE, Chief Justice.

This case comes to us after a district court jury found the defendant-appellant, Fred Andrew Gore, guilty of manslaughter for the death of his wife, Hazel Ann Gore. The appellant seeks to have the verdict set

aside on the grounds that there was insufficient evidence to support the verdict and that the jury was given an improper instruction that prejudiced the defendant's case.

Because we find that there is ample evidence to support the verdict and because as a matter of law we find the jury instructions cannot be said to be fundamentally defective, we affirm the judgment of the lower court.

## THE FACTS

Around 11:30 p. m. on November 12, 1979, Hazel Ann Gore was killed by a bullet, fired from a .44 magnum pistol, that passed through her jaw and out the back of her head. She was found at the foot of the couch in the front room of the trailer home in Jeffery City where she lived with the defendant. The defendant, who had called the police, was found crying over the victim's body and, at the time, he was intoxicated.

Neither the physical evidence nor the testimony of the defendant demonstrates conclusively where or how the shooting took place. The defendant's pistol was shown to be the weapon that fired the fatal bullet. The victim's blood was found on the ceiling in the front room, on the bed sheets, on a nightstand in the bedroom, on the bathroom floor, and in various other locations in the trailer. Several hours after the shooting, the defendant told a police officer that Hazel Gore had gone into the bedroom and taken the loaded gun from the nightstand where it was regularly kept. Supposedly, she then brought the gun into the front room where the defendant tried to take it away from her. At this time, the defendant explained, the gun went off. Fred Gore later told another officer that he and the victim were "playing" with the gun in the bedroom and that the victim grabbed the gun which he said he was holding when it discharged. At the trial, the defendant, who admitted to being an alcoholic with frequent loss of memory after drinking heavily, said he could not recall any of the events leading up to the shooting. Expert testimony indicated the gun was from two to five feet away from Hazel Gore when

the shot was fired and that she could not have been in control of the gun when it discharged.

The evidence of Fred Gore's intoxication is important to these considerations. The defendant had been drinking continuously all day and had consumed upwards of a quart of whiskey. Two and a half hours after the incident, a breathalizer test revealed the defendant to have a blood-alcohol level of .18 or .19. Assuming a normal rate of dissipation of the alcohol from the blood stream, it was estimated that at the time of the shooting the defendant's blood-alcohol level was .21 or .22. Uncontradicted expert testimony indicated that a man with .21 blood-alcohol level would be unable to handle a loaded gun safely.

Testimony concerning one other incident is of interest to us on this appeal. On September 29, 1979, the day the defendant bought the gun, he was driving with the victim in their pickup truck and test firing the pistol out the window as they drove. The gun misfired and sent a bullet through the window of the truck, severely upsetting Mrs. Gore. The defendant had been drinking prior to this incident also. The episode apparently made a strong impression on Hazel Gore since the defendant remarked that "[s]he hated the damn thing ever since the damn gun went off in the pickup."

## SUFFICIENCY OF THE EVIDENCE

As we have frequently noted, the rules of appellate review do not require or allow us to judge whether or not we think the evidence demonstrates the defendant is guilty beyond a reasonable doubt. That task is reserved for the jury. When reviewing an appeal based on the claimed insufficiency of evidence, we will only determine whether the evidence and the reasonable inferences that may be drawn from the evidence are sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt. *Nisonger v. State*, Wyo., 581 P.2d 1094 (1978).

In the present case, the jury heard the evidence recited above, and more. The jury heard and, presumably, evaluated each

witness as his testimony was given. There is ample evidence in the record for the jury to conclude that the defendant was "playing" with a gun that he knew was loaded while he was in a state of extreme intoxication. The defendant knew of the victim's dislike of the gun. In fact, her fear of the pistol arose from an accidental firing that took place while the defendant had been drinking and "messing" with the gun. The evidence clearly showed the victim died from a bullet from the same gun fired in the presence of the defendant while the gun was beyond the control of the victim. From the cold record we can think of few scenarios that would explain the tragic death of Hazel Gore that do not center on the culpable negligence of Fred Andrew Gore. The evidence is sufficient to support the inference of guilt beyond a reasonable doubt.

## THE EAGAN RULE

The appellant argues that the rule from *Eagan v. State*, 58 Wyo. 167, 128 P.2d 215 (1942), is applicable to the present case and, if followed, requires a reversal. The Eagan Rule is clearly not appropriate in this case. In *Eagan* we said:

> " * * * Where an accused is the sole witness of * * * [the] crime, * * * his testimony cannot be arbitrarily rejected, and if his credibility has not been impeached, and his testimony is not improbable, and is not inconsistent with the facts and circumstances shown, but is reasonably consistent therewith, then his testimony should be accepted. * * *" 128 P.2d at 226.

While the defendant in this case is the only witness to the events, his testimony is inconsistent not only with the circumstantial evidence but also with the various versions of the story he told. Under oath in front of the jury, he admitted he had no recollection of what happened. The appellant suggests that the Eagan Rule dictates that the jury must accept the version of the story he gave while intoxicated several hours after the shooting. At that time, while answering a police officer's questions, he blamed Hazel Gore for grabbing the gun and thereby causing its discharge.

■ There are two problems with the appellant's theory. First, the Eagan Rule does not apply when the witness' testimony is contradicted not only by circumstantial evidence but also by his own testimony. *Leitel v. State*, Wyo., 579 P.2d 421 (1978). If it did, this would be tantamount to holding that the jury must accept any story offered by the defendant that would exonerate him. Here, the defendant contradicted the more favorable story within a matter of hours after he gave his initial version. Later, at the trial, he offered no explanation. This is obviously not the proper case for the application of this rule.

■ The second flaw with the appellant's theory is that he assumes that if the jury accepted the first version of the story, they would necessarily have found him innocent. We do not think that this follows. The defendant merely told the officer that his wife first brought the gun into the front room and that it fired as he attempted to take it away from her. From this, the jury could have concluded that the defendant had been trying to disarm his wife or alternatively that he had been reckless in playing with the pistol. Under the second conclusion, the defendant would still be guilty of manslaughter.

The defendant's repeated use of the terminology "playing with" and "messing with" when referring to the handling of the pistol is enough to cause legitimate doubts as to whether he appreciates the level of care that a reasonable person is required to use when handling a loaded weapon. In spite of frequent experience with guns and a previous accident with the same pistol, the defendant apparently viewed a loaded .44 magnum pistol as a toy that could provide amusement when he was drinking. Such behavior might well be considered negligence per se. The appellant's suggestion that this is normal behavior deserves no discussion.

## THE JURY INSTRUCTION

The appellant's second ground for appeal is that the district court's instructions to the jury were defective because they did not

include a proper instruction on proximate cause. He correctly identifies the elements of the crime of manslaughter as being the death of a human being, along with an involuntary act by the defendant which constitutes criminal carelessness or culpable neglect and that the act is the proximate cause of the death of the deceased. Each element of the crime must, of course, be proved beyond a reasonable doubt.

The appellant complains that the instructions given by the trial court did not say that the jury must find that "[t]he Defendant's culpable neglect or criminal carelessness *was the proximate cause of the death of the deceased.*" (Emphasis in original.) He implies that such an instruction would have been sufficient. The instruction given by the court said that if the defendant killed a human being, involuntarily, but "by any culpable neglect or criminal carelessness," he was guilty of manslaughter. The instructions given do not use the words "proximate cause" or "cause."

The district court issued ten instructions to the jury before it retired to consider the case against Fred Gore. In Instruction No. 4, the trial judge admonished the jury that if they felt the evidence permitted two conclusions—one of guilt, the other of innocence—the jury must bring in a verdict of innocent. In Instruction No. 5, the judge quoted the relevant Wyoming statute, § 6–4–107, W.S.1977, Cum.Supp.1980, on manslaughter:

> " 'Whoever unlawfully kills any human being without malice[,] expressed or implied, * * * involuntarily, [* * *] by any culpable neglect or criminal carelessness[,] is guilty of manslaughter * * *.' "

The court explained that statute in Instruction No. 6, by listing the elements of the crime exactly as the appellant does but substituted "by" for the appellant's requested phrase "was the proximate cause of." The appellant does not suggest that the proximate-cause phrase would need further

explanation in the instructions, but assumes that standing alone it would make a material difference in the way the jury viewed the case.

In reviewing this claim on appeal it is of importance to us that no objection to the instructions was made at the trial. Rule 51 of the Wyoming Rules of Civil Procedure states:

> " * * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict * * *." [1]

This rule also applies in all criminal cases. *Bentley v. State,* Wyo., 502 P.2d 203 (1972). The objections to instructions must be specific and not general. *Schwager v. State,* Wyo., 589 P.2d 1303 (1979). This is done so that the judge is apprised of the correct statement of the law and has an opportunity to cure the improper instruction. *Reeder v. State,* Wyo., 515 P.2d 969 (1973). The failure to object to an instruction or to request an alternative instruction at the trial precludes our review of the issue unless the instructions given can be said to be plainly erroneous. *Cullin v. State,* Wyo., 565 P.2d 445, 454 (1977).

One important reason for invoking the plain-error doctrine when reviewing jury instructions which were not objected to during the trial, is that jury instructions are written with the particular facts and theories of each case in mind. The judge, with the advice and assistance of the attorneys in the case, attempts to tailor the instructions so that they help the jury develop a clear understanding of how the facts are to be determined under the applicable law of the case. The problems the jury may have with the applicable law will differ from case to case and therefore the instructions appropriate to each case may also differ. In many cases, any one of several instructions may be legally correct. It is the duty of the attorneys in each case to determine

---

1. Rule 51, W.R.C.P., is made applicable to criminal proceedings by Rule 31, W.R.Cr.P., which provides:

   "Instructions to the jury shall be given and objections thereto made at the time and in the manner provided for the giving of in-structions and the making of objections thereto in the Wyoming Rules of Civil Procedure. Opportunity shall be given to make objections out of the hearing and presence of the jury. Copies of requested instructions shall be served on adverse parties."

which legally acceptable instruction best presents the client's case. Neither the judge, nor the appellate court, has the appropriate perspective to make such a decision. Even if they did understand the case better than the attorney presenting it, their role prohibits them from urging one instruction over another providing both are legally sound. Thus, unless an instruction can be said to have plainly caused a fundamental prejudice to the defendant's legal rights, we will not overturn it on appeal unless it was objected to during the trial and a proper instruction was offered in its place.

The judge in this case asked each side to submit proposed instructions. None of the defendant's proposed instructions included the phrase "proximate cause" nor did they include a definition or explanation of that legalistic concept. While the defendant's proposed Instruction No. 3 does use the word cause, it is a poorly written and confusing instruction that does nothing more than repeat the information given in Instruction No. 6. The word cause is not magic. It is not used in the Wyoming manslaughter statute. We are unwilling to say that an unclear instruction that contains this word is to be preferred by the trial judge over a better-written instruction without it.

The instructions given do not raise the issue of plain error. We have said on several occasions that to show plain error the record must clearly show what happened at the trial level, that there is an unequivocal rule of law and that the facts of the case particularly and obviously transgress that rule. *Daellenbach v. State*, Wyo., 562 P.2d 679 (1977). Once these criteria have been met, it must be shown that a substantial right of the accused has been adversely affected. *Hampton v. State*, Wyo., 558 P.2d 504 (1977). Since we have held that the instructions given are sufficient to properly inform the jury absent a reasoned objection based on the facts of the case, we certainly cannot say that a clear, unequivocal rule of law has been violated. From this it is obvious that the plain-error doctrine does not apply in this case.

The instructions given by the trial judge were of themselves legally sufficient. One instruction quoted the relevant statute, while another laid out the elements of the crime step by step in plain language.

Affirmed.