**Ray W. HARRIES, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 5686.**

Supreme Court of Wyoming.

Aug. 26, 1982.

Micheal K. Shoumaker of Koester, Tarver & Shoumaker, Sheridan, for appellant.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Allen C. Johnson, Sr. Asst. Atty. Gen., and Roger Fransen, Legal Intern (argued), Cheyenne, for appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROONEY, Justice.

■ Appellant was sentenced to serve a term of four to five years in the penitentiary after a jury trial in which he was found guilty of violating § 6–11–101(a), W.S.1977, Cum.Supp.1981.[1] He appeals from the judgment and sentence, wording the only issue: "* * * whether the evidence is insufficient to support the jury verdict."

We affirm.

" 'The oft-repeated rule by which we test the sufficiency of evidence on appeal of a criminal matter is that we examine and accept as true the evidence of the prosecution, leaving out of consideration entirely the evidence of the defendant in conflict therewith, and we give to the evidence of the prosecution every favorable inference which may reasonably and fairly be drawn therefrom. Stated another way—it is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State. [Citations.]' *Harvey v. State*, Wyo., 596 P.2d 1386, 1387 (1979). * * * " *Grabill v. State*, Wyo., 621 P.2d 802, 803 (1980).

Following is a summary of the evidence reviewed under this standard:

Appellant and three companions went to a bar in Sheridan at about 12:30 A.M. on December 8, 1981. They rode in a pickup truck which belonged to one of the friends. A fight broke out in the bar and was pushed through the door to the area outside the bar. Most of the patrons of the bar went outside and a number of them were involved in the fight. Shortly after the fight moved to the outside, appellant went out. As he went through the door, someone hit him. He testified that he:

"* * * ran around to the other side of the truck and I thought, I got to get a club or a tire iron or something, and so I opened up the passenger side of Mike's truck, which I didn't even know it was open at that time, and I reached underneath the seat to see what I could find and I came up with a gun * * *."

The person against whom the assault and battery is alleged to have been made, William D. Blanchard, testified as follows:

"Q. Describe as accurately and in as much detail as you can what you saw regarding the man with the gun.

"A. He came around the front of the pickup and he drew the gun up and he cocked the hammer back.

"Q. Let me interrupt just for a second. How far away from him were you at that point?

"A. About five feet.

\* \* \* \* \* \*

"Q. Could you tell us what happened next.

"A. Well, he aimed the gun at one smaller kid, told him to get back in the bar, and the kid started backing up in the bar and he started waiving [sic] the gun around.

"Q. You said he aimed it at a smaller kid. Do you know the name of that individual?

"A. No, I don't.

"Q. And he ordered that person back in the bar?

"A. Yes.

"Q. Then what happened?

"A. Then he turned towards Butch— Butch was on my right, about two foot [sic] between me and the door, maybe a little behind me, and he started saying, 'I'll kill. I'll kill.' He said, 'Get back in the bar.

1. Section 6–11–101(a), W.S.1977, Cum.Supp. 1981, provides:

"Any person who knowingly possesses, manufactures, transports, repairs or sells any firearm, knife, dirk, club, bludgeon, chain, rock, bottle, or any other dangerous or deadly weapon, or any explosive or incendiary apparatus, instrument or materials, with the intent to unlawfully threaten the life or physical well being of another, to commit assault or assault and battery or to inflict bodily harm or injury upon the person of another is guilty of a felony and, upon conviction, shall be punished by imprisonment in the penitentiary for not to exceed five (5) years."

I'll kill.' Then he waived [sic] the gun and he took a couple of steps at me and he stuck the gun right in my chest.

"Q. Had you approached him in any manner prior to that?

"A. No.

"Q. It's your testimony he moved toward you and put the gun in your chest?

"A. Yes.

"Q. Could you show the jury where he was pointing this gun.

"A. It was right about two foot [sic] from my face. It was pointed right at my chest. There was no doubt in my mind where it was pointed."

Blanchard testified that he stepped sideways and grabbed the gun as it went off. He testified further:

"Q. Do you know which direction it was pointed when it went off?

"A. Yes. It was pointed down under my right arm.

"Q. Did the bullet hit you or anyone else to your knowledge?

"A. No. The only reason it was pointed there was because I jumped to the side when I went for the gun.

"Q. It went to where you were standing before?

"A. If I had stood there and grabbed it, it would have hit me right in the chest."

He testified that he believed he hit appellant with the gun and knocked him down, and that appellant got up and ran from the area.

This evidence was certainly sufficient to form the basis for the jury to draw reasonable inference of guilt beyond a reasonable doubt. It could find the elements of the offense to have been so established, i.e. it could find beyond a reasonable doubt that appellant knowingly possessed a firearm with the intent to unlawfully threaten the life or physical well being of another, to commit an assault or an assault and battery on him, or to inflict bodily harm or injury on him.

But appellant argues that his actions were justifiably taken in self-defense and were therefore not criminal. The trial court instructed the jury without objection in this respect as follows:

"It is lawful for a person who is being assaulted to defend himself from attack if he has reasonable grounds for believing and does believe that bodily injury is about to be inflicted upon him. In doing so he may use all force and means which he believes to be necessary and which would appear to a reasonable person, in the same or similar circumstances, to be necessary to prevent the injury which appears to be imminent." Instruction No. 10; Wyoming Pattern Jury Instructions Criminal, 5.208.

"To justify acting in self-defense, it is not necessary that the danger was real, or that the danger was impending and immediate, so long as the defendant had reasonable cause to believe and did believe these facts. If these two requirements are met, acting in self-defense was justified even though there was no intention on the part of the other person to do him harm, nor any impending and immediate danger, nor the actual necessity for acting in self-defense." Instruction No. 11; Wyoming Pattern Jury Instructions Criminal, 5.210.

"One who has reasonable grounds to believe that another will attack him, and that the anticipated attack will be of such a character as to endanger his life or limb, or to cause him serious bodily harm, has a right to arm himself for the purpose of resisting such attack.

"If the defendant armed himself in reasonable anticipation of such an attack, that fact alone does not make the defendant the aggressor or deprive the defendant of the right of self-defense." Instruction No. 12; Wyoming Pattern Jury Instructions Criminal, 5.204.

"Even if the Defendant had reasonable ground to believe, and actually did believe, that he was in imminent danger of death or serious bodily harm, he was justified in using deadly force to repel the danger only if he retreated as far as he safely could before doing so. The law requires a person to retreat rather than

to take the life of his adversary if there was a convenient mode of retreat without increasing his peril or apparent peril. To excuse a failure to retreat, it is necessary that the Defendant's peril would be increased, or that it reasonably appeared that it would be increased by retreat. If you find that the Defendant could have safely retreated but failed to do so, the Defendant cannot rely on the justification of self-defense." Instruction No. 13; Wyoming Pattern Jury Instructions Criminal 5.207. "The right of self-defense exists only as long as the real or apparent threatened danger continues to exist. When the danger no longer appears to exist, the right to use force in self-defense ends." Instruction No. 14; Wyoming Pattern Jury Instructions Criminal, 5.211.

The factual issues upon which a determination of the existence of self-defense were, thus, presented to the jury, and the instructions (which were not objected to) became the law of the case. *Gary v. Foster Lumber Company, Inc.*, Wyo., 531 P.2d 497 (1975); *DeWitty v. Decker*, Wyo., 383 P.2d 734 (1963).

The jury could reasonably find beyond a reasonable doubt that appellant did not have "reasonable grounds for believing and does believe that bodily injury is about to be inflicted upon him" when he went to the pickup to obtain a tire iron or other weapon. The jury could reasonably find beyond a reasonable doubt that appellant could have then left the scene or that he could have just sat in the pickup. Even if the jury found that defendant properly armed himself in reasonable anticipation of an attack upon him, it could reasonably find beyond a reasonable doubt that he failed to retreat "as far as he safely could" before using force in self-defense. The jury could consider the fact that appellant did eventually run from the scene in reaching such finding. The testimony set forth supra is evidence sufficient for such jury findings. Blanchard also testified:

"Q. Tell us what happened next.

"A. The next thing I seen was this Mr. Harries, I believe, come around the front of the pickup with a gun.

"Q. Let me ask you this, prior to that, did you become involved in any way in any of these hassles that were going on out there, intervene in any way at all?

"A. No. I was just standing there. It looked to me like it was over. I thought, just let it go. It had all quieted down and everybody would leave so I just stood there."

From this testimony, the jury could reasonably find beyond a reasonable doubt that appellant was not being assaulted by Blanchard in the first place and that appellant did not have reasonable grounds for believing that bodily injury was about to be inflicted upon him whereby he was properly permitted to act in self-defense.

Appellant argues on appeal that the defense undertaken by him was a defense of his friends. He refers to LaFave & Scott, Crim.Law (1972), in support of the position that his actions in this case were justified. Section 54, p. 397, thereof reads:

"By the better rule, one is justified in using reasonable force in defense of another person, even a stranger, when he reasonably believes that the other is in immediate danger of unlawful bodily harm from his adversary and that the use of such force is necessary to avoid this danger. Deadly force is reasonable force only when the attack of the adversary upon the other person reasonably appears to the defender to be a deadly attack."

We need not here consider either (1) whether or not such is a correct statement of the law in Wyoming, or (2) whether or not the statement of law would be applicable under the facts of this case. The contention that the defense was on behalf of appellant's friends was simply not presented to the jury as a justification for appellant's actions. A review of the instructions quoted supra and of the other instructions given in this case reflect that the jury was not presented with a question of justification for appellant's action on the basis of defense of his friends. Instructions in this respect were not requested, and objections were not made to the self-defense instruc-

tions which were given and which did not contain a "defense of friends" justification. The trial court was not asked to pass upon the legal aspect of the proposition. Accordingly, we cannot further consider the contention.

"* * * [W]e will not consider matters raised for the first time on appeal unless they go to jurisdiction or are otherwise of such a fundamental nature that the court must take cognizance of them. * * *" *Nickelson v. People*, Wyo., 607 P.2d 904, 908 (1980).

"Instructions to the jury shall be given and objections thereto made at the time and in the manner provided for the giving of instructions and the making of objections thereto in the Wyoming Rules of Civil Procedure. * * *" Rule 31, W.R.Cr.P.

"* * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * * *" Rule 51, W.R.C.P.

 The purpose of Rule 31, W.R.Cr.P., is to offer the trial judge an opportunity to correct, or at least clarify, proposed instructions, and the burden is on the defendant to show prejudicial error. Failure to object to instructions precludes our review. *Downs v. State*, Wyo., 581 P.2d 610 (1978); *Scheikofsky v. State*, Wyo., 636 P.2d 1107 (1981). We said in *Scheikofsky* at page 1109:

"* * * A defendant does have the right to have his theory of the case affirmatively presented to the jury, *provided that the offered instruction is sufficient to inform the court of the defendant's theory* and provided that there is competent evidence in the record to support it. * * *" (Emphasis added.)

Appellant did not offer an instruction or otherwise advise the trial court that his theory of the case encompassed a "defense of friends" justification for his actions.

Affirmed.