Jack E. GOGGINS and Mary Ellen Goggins, husband and wife, Appellants (Plaintiffs),

v.

Ed HARWOOD and Harwood Enterprises, a Wyoming corporation, Appellees (Defendants).

No. 85–10.

Supreme Court of Wyoming.

Aug. 13, 1985.

C.S. Hinckley of Hinckley & Hinckley, Basin, for appellants.

Jeffrey J. Gonda of Lonabaugh and Riggs, Sheridan, for appellees.

Before THOMAS, C.J., ROSE, ROONEY and CARDINE, JJ., and LANGDON, District Judge.

ROSE, Justice.

This appeal grows out of a judgment entered upon a jury's verdict which finds that even though appellee Ed Harwood committed an assault and battery upon appellant Jack Goggins on September 14, 1981, the assault and the battery were not "a proximate cause of the injuries sustained" by appellant, and the jury's further finding that "[w]ithout considering" its answer to other questions on the verdict form, the amount which it believed would "fairly compensate the Plaintiff, Jack E. Goggins, for his *alleged* injuries" was "One Hundred Thousand $100,000.00." [1]

## FACTS

Plaintiff-appellant Goggins alleged but defendant-appellee Harwood denied that Harwood committed an assault and battery upon Goggins by striking him on the head with his fist while he, Goggins, was sitting in his pickup truck. The jury decided this issue in Goggins' favor and, for purposes of this opinion, we are bound by that finding. The evidence is, however, in conflict with respect to the extent of the

---

1. These quotations are taken from the jury form, but we have furnished the emphasis for the word "alleged."

injury. Appellant's doctors testified that, as a consequence of the striking, and in addition to minor abrasions, contusions and a headache, Goggins suffered epilepsy, post-traumatic brain damage resulting in intelligence-quotient reduction and a serious ear injury. The appellee's doctors denied that these serious and permanent injuries or conditions resulted from the blow. Since we are bound to accept the testimony most favorable to the successful party and disregard the evidence of the unsuccessful party in conflict therewith,[2] it will be our assumption throughout these considerations that the assault did not cause the appellant's alleged epilepsy, post-traumatic brain damage and permanent ear injury.

There is, however, competent and *uncontradicted* medical testimony that *some* injury resulted from the blow. The doctor who saw appellant the day after the incident in question—a Dr. Willson—testified that Goggins had

"[s]welling, contusion, some ecchymosis, which is black and blue areas, a small amount of abrasion, puncture type thing around the ear."

He described the "puncture type thing" as:
"Break, small break in the skin. It's a scrape or puncture from the obvious blow of some sort."

A request for a further description of the ear area brought this response:
"Well, they were scrapes and pin point punctures, whatever you want to call them, small breaks in the skin and some minor abrasions around the ear, abrasions just being a break on the skin as a

pin prick being a small break in the skin or puncture wound."

Dr. Willson also reported that Goggins had a vascular headache due to a blow on the head.

Dr. Schwidde, a neurologist, to whom Dr. Willson referred Goggins, wrote to Willson after examining the appellant on September 15, 1981, that Goggins had "sustained a blow to the left ear" at 6:00 p.m. on September 14, 1981, and "he developed a right frontal headache." He said that he had received a "cranial cerebral trauma, blow to left ear" and that he had developed a "severe headache and neck and left pectoral pain" as a result of the blow and that Goggins was "dazed" after the blow but not rendered unconscious. The doctor prescribed some "Talwin Compound" to treat the headache.

It is to be further observed that both Dr. Willson and Dr. Schwidde submitted bills for services rendered to appellant, which services were necessitated by the assault and battery in issue here, and the appellant incurred medical prescription expense that was occasioned by the doctor's ordering medicine relief for the headaches.

### The Appellant's Position

The appellant represents that "the primary basis for this appeal" is the "Special Verdict Form." For clarity of the issues and the discussion which follows, we herewith publish the relevant part of that document:

"SPECIAL VERDICT FORM

"We, the jury, duly empaneled and sworn to try the above-entitled cause, do find as follows:

"QUESTION 1. Did the Defendant, Ed Harwood, commit an assault and battery upon the Plaintiff, Jack E. Goggins?

2. We have often said:
" 'We assume that evidence in favor of the successful party is true, disregarding entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it.' " *Anderson v. Bauer*, Wyo., 681 P.2d 1316, 1319 (1984), quoting from *Richardson v. Green*, Wyo., 644 P.2d 778, 779 (1982).
*Pine Creek Canal No. 1 v. Stadler*, Wyo., 685 P.2d 13, 17–18 (1984); *Scott v. Fagan*, Wyo., 684 P.2d 805, 809 (1984); *Brockett v. Prater*, Wyo., 675 P.2d 638, 640 (1984); *Herman v. Speed King Manufacturing Company*, Wyo., 675 P.2d 1271, 1275 (1984).

"ANSWER Yes  X
        No ___

"(If your answer to Question 1 is 'Yes' then you will answer Question 1A. If your answer to Question 1 is 'No', then you should proceed to sign the jury verdict form and return it to the Bailiff.)

"QUESTION 1.A. Was the assault and battery of Ed Hardwood upon Jack E. Goggins a proximate cause of the injuries sustained by Jack E. Goggins?

"ANSWER Yes ___
        No  X

"QUESTION 3. Without considering your answers to the Questions above, what total amount of damages do you award to fairly compensate the Plaintiff, Jack E. Goggins, for his alleged injuries:

        "One Hundred Thousand
"ANSWER $ 100,000.00

"QUESTION 4. Was Ed Harwood guilty of willful and wanton misconduct under the circumstances of this case?

"ANSWER Yes ___
        No  X

                    "/s/ Jessie M. Pryde
                       FOREMAN/FOREWOMAN"

---

The appellant argues that the trial court's instructions having to do with the allegations of the parties, causation, burden of proof, disability, and damages, when considered together with the special-verdict form, caused the jury to become confused, resulting in the return of a fatally inconsistent and faulty verdict. The questioned instructions pertaining to allegations of the parties, proximate cause, burden of proof, disability, and damages are the following:[3]

### Allegations of the Parties

Instruction No. 3 provided:

"This law suit arises as the result of an incident on September 14, 1981, involving Jack E. Goggins and Ed Harwood. On that particular day, on the road from Basin to Otto, Wyoming, Mr. Goggins and Mr. Harwood had a discussion concerning a water well easement which Mr. Goggins wanted to obtain on the property of Mr. Harwood.

"Mr. Goggins alleges that during this conversation, Mr. Harwood committed an assault and battery upon him. *He furthermore alleges that as a result of this alleged assault and battery, he has suffered personal injuries and he requests that he be awarded damages for these injuries.*

"Mr. Harwood denies ever assaulting or battering Mr. Goggins. He denies that he inflicted any bodily harm on Mr. Goggins and therefore denies that Mr. Goggins should be awarded any damages in this case.

"The Plaintiff, Jack E. Goggins, has the burden of proving his claim by a preponderance of the evidence.

"The Defendant, Ed Harwood, has the duty of proving the elements of his defense by a preponderance of the evidence." (Emphasis added.)

### Burden of Proof

Instruction No. 6 provided:

---

**3.** Since the causal issue is the principal concern of the appellant, we underline causal references in the following jury instructions although they were not emphasized when presented to the jury.

"The Plaintiff has the burden of proving by the preponderance of the evidence the following:

"(1) That the Defendant committed an assault and battery upon him as is defined in Instruction No. 5.

"(2) *That the assault and battery of the Defendant was the proximate cause of the injury and damage to the Plaintiff.*

"(3) The nature and extent of the injuries claimed to have been so suffered, the elements of the Plaintiff's damage and the amount thereof.[4]

"The Defendant has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following:

"(1) That he did not assault and batter the Plaintiff as those terms are defined in Instruction No. 5.

"(2) *That the Plaintiff's injuries and damages were not caused by any actions of the Defendant* and that the injuries and damages of the Plaintiff were pre-existing or other wise arose from causes other than the actions of the Defendant.

"In determining whether an issue has been proved by a preponderance of the evidence, you should consider all of the evidence bearing upon that issue regardless of who produced it. The existence of such proposition must be more probable than its non-existence." (Emphasis added.)

### Proximate Cause

Instruction No. 11 provided:

*"A proximate cause of an injury is a cause which in direct, unbroken sequence produces the injury. It is one without which the injury would not have occurred."* [5] (Emphasis added.)

### Mental Anguish

Instruction No. 12 provided:

*"You are further instructed that mental anguish and suffering arising proximately from said injuries, is a proper element of damages,* which with reasonable certainty can be expected to hereafter endure, arising from the decrease of the ability of any part of the body to function." (Emphasis added.)

### Disability

Instruction No. 13 provided:

"A person who has a condition or disability at the time of an injury is not entitled to recover damages therefore. However, *he is entitled to recover damages for any aggravation of such preexisting condition or disability proximately resulting from the injury.*

"This is true even if the person's condition or disability made him more susceptible to the possibility of ill effects than a normally healthy person would have been, and even if a normally healthy person probably would not have suffered any substantial injury.

"When preexisting condition or disability is so aggravated, the damages as to such condition or disability are limited to the additional injury caused by the aggravation." [6] (Emphasis added.)

### Damages

Instruction No. 9 provided:

"If you decide for the Plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for those

4. Wyoming Civil Pattern Jury Instruction No. 3.01, on plaintiff's burden of proof in a negligence case, provides that:

"In this action the plaintiff has the burden of proving by a preponderance of the evidence the following: * * *

* * * * * *

"(1) That the defendant was negligent; (2) that the negligence of the defendant was a proximate cause of injury and damage to the plaintiff; and (3) The nature and extent of the injuries claimed to have been so suffered, the elements of plaintiff's damage and the amount thereof. * * * [Wyoming case citations.]"

5. Verbatim from W.C.P.J.I., No. 3.04.

6. Verbatim from W.C.P.J.I. No. 4.03.

elements of damage proved by the evidence to have been caused by the action of the Defendant, taking into consideration the nature, extent and duration of the injury.

"(1) The claimed elements of damages are:

"(a) The pain of suffering experienced as a result of the injuries and those reasonably certain to be experienced in the future.

"(b) Disability.

"(c) Loss of enjoyment of life. The award for this specific element should not duplicate the award given for any other element of damage.

"(d) Loss of earnings. The value of earnings lost to this date and the present cash value of any earnings reasonably certain to be lost in the future.

"(e) Medical expenses. The reasonable expense of necessary medical care, treatment and services received to date, and any medical expense reasonably certain to be incurred in the future.

"Whether any of these elements have been proven is for you to determine." [7]

We do not understand the appellant's principal claim to be that the instructions are—in and of themselves—inherently erroneous [8]—only that, *when considered with the verdict form*, the jury was forced to become confused and, for this reason, returned a verdict which was substantively so defective as to constitute prejudicial error. For example, the appellant is particularly concerned with the effect that the verdict form had upon the proximate-cause instructions, and says in his brief:

"It is Appellant's contention that the lower court erred in permitting the 'special verdict form' to be submitted to the jury. *The form was confusing and misleading when considered in the light of the other instructions concerning 'proximate cause'.* It is the Court's responsibility to see to it that the law of the case is clearly set forth in the instructions. It is axiomatic and fundamental that a jury cannot be confused or misled on a subject so vital as 'proximate cause'. The Court should not be allowed to relieve itself from its vital and essential role as the 'legal supervisor' by citing the rule that any objections not raised by the attorneys are waived. Ultimately, the court must have some responsibility to protect clients and lawyers from themselves. There are even times when it must be the responsibility of the trial court to protect clients from their lawyers." (Emphasis added.)

Again, in his brief, the appellant argues:

"The 'Special Verdict Form' given to the Jury by the lower court was confusing and misleading on the matter of 'cause'. In truth, the form actually contradicted the law incorrectly spelled out [9] by the court in Instruction No. 6 and other instructions relating to the question of cause."

It stands without contest that neither the form of the special verdict nor any of the given instructions were objected to by appellant, and the appellant did not submit substitute instructions or verdict form in their stead. Further, when the jury returned its verdict to the court, appellant

---

7. Verbatim from W.C.P.J.I. No. 4.01.

8. If appellant's brief can be read to say that the instructions misstate propositions of law for which they purport to stand, he does not point to where the law in any given instruction is misstated, nor does he cite any authority for such position. We would therefore consider such a contention as either having been waived, or that we have no obligation to consider it. *Kincheloe v. Milatzo,* Wyo., 678 P.2d 855 (1984); *Barnette v. Doyle,* Wyo., 622 P.2d 1349 (1981). In any event, we do not find errors of law to be

contained in the instructions numbered 3, 6, 11, 12, 13 and 9, supra.

9. Again, we will not consider the law of proximate cause to have been "incorrectly spelled out" in the instructions, not only because we do not find this to be the case, but, if the appellant does not believe that the instructions constitute a proper statement of the law of proximate cause, it is his obligation to point out why this is true, and to cite authority. This has not been done. See n. 8.

lodged no objection to the verdict prior to the jury's discharge.

With respect to his failure to object or offer substitute instructions, the appellant describes his position as follows:

"The primary basis for this appeal is the 'Special Verdict Form' given to the jury by the District Judge below. * * * The Verdict Form was prepared and submitted by Appellee. Appellant knew about the Special Verdict Form and raised no objections to it prior to its submission to the Jury, and raised no objections when the Verdict Form was completed and signed by the Jury Foreman. Even though there were no objections raised by Appellant it shall be his position in his brief that it was the first and primary responsibility of the District Judge to see to it that proper instructions were submitted to the Jury. Appellant shall argue here that the lower court committed fundamental and prejudicial error by submitting contradictory, confusing, and misleading instructions to the Jury." [10]

### Appellee's Position

In response, it is the appellee's position that there is no error in the special-verdict form as submitted and the other instructions were proper, but if there was error in submission of the special-verdict form and the questioned instructions, it was waived and they became the law of the case. The appellee also contends that the verdict as returned is not inconsistent either on its face or as it is compared to the evidence in the case, and, finally, that any error which this court might find to be present does not, in any event, reach plain-error proportions.

### The Issues

The appellant identifies the issues for decision as follows:

1. "The district court committed fundamental and prejudicial error in submitting contradictory, confusing, and misleading instructions and verdict form to the jury."

2. "The lower court's finding that the evidence was conflicting on the matter of 'cause' is erroneous. Since the jury was confused by the court's instruction and verdict form on the subject of cause, and since the evidence that some of the injury was caused by the assault and battery was uncontradicted, the jury could very easily have found in favor of Goggins on 'cause' had they not been confused and misled by the court."

We see the issues as being these:

1. Were the instructions erroneous?

2. If they were, were the errors waived by defendant's failure to object or offer instructions in their stead?

3. If the instructions constituted error and the error was waived, was it nonetheless plain error?

4. Was the proffered special-verdict form erroneous as submitted?

5. Was the returned verdict inconsistent on its face and inconsistent when compared to the uncontroverted evidence and thus an irregular and improper verdict?

6. If the verdict as submitted and returned constituted error that was waived, did the error nevertheless call for reversal under the plain-error doctrine?

### Decision

*Instructions—Failure to Object*

Was it error to fail to object to proffered instructions prior to their submission to the jury?[11]

Rule 51, W.R.C.P., states in part:

---

10. We hereafter assume throughout this opinion, unless convenience and clarity dictate otherwise, that the word "instructions" is understood by courts and counsel to be utilized generically to include the special verdict form containing the court's instruction to the jury that it will respond to the interrogatories therein contained. *DeWitty v. Decker,* Wyo., 383 P.2d 734 (1963.)

11. In this particular inquiry which is entitled "*Instructions—Failure to Object,*" the special verdict is *not* considered to be an "instruction."

" * * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict stating distinctly the matter to which he objects and the grounds of his objection."

The rule was applied in *Cates v. Eddy*, Wyo., 669 P.2d 912 (1983); *Tadday v. National Aviation Underwriters*, Wyo., 660 P.2d 1148 (1983); *Harries v. State*, Wyo., 650 P.2d 273 (1982); *Dorador v. State*, Wyo., 573 P.2d 839 (1978); *Hurst v. State*, Wyo., 519 P.2d 971 (1974); and *Logan v. Pacific Intermountain Express*, Wyo., 400 P.2d 488 (1965).

■ The spirit and purpose of the rule is designed to appraise and inform the trial court of the purpose of the instruction in order that the judge may make such corrections as he deems necessary before submitting the instructions to the jury. *Alberts v. State*, Wyo., 642 P.2d 447 (1982); *Runnion v. Kitts*, Wyo., 531 P.2d 1307 (1975); *Schwager v. State*, Wyo., 589 P.2d 1303 (1979).

■ We hold that failure to object to instructions in the trial court which appellant now contends were erroneous precludes appellate review, and, unless plain or fundamental error [12] can be shown to prevail, became the law of the case. *Mora v. Husky Oil Company*, Wyo., 611 P.2d 842 (1980); *Pure Gas and Chemical Company v. Cook*, Wyo., 526 P.2d 986 (1974); *Joly v. Safeway Stores, Inc.*, Wyo., 502 P.2d 362 (1972); *DeWitty v. Decker*, Wyo., 383 P.2d 734 (1963).

*Failure to Object to Submitted Verdict Form And Returned Verdict*

Was it Error to Fail to Object To the Verdict as Submitted and Returned?

The appellant urges that the trial court committed prejudicial error in two separate respects as regards the special verdict. He says that the form of verdict was fatally defective, which, when read with the instructions, led to confusion, and that the verdict, as returned, was irregular and im-

proper on its face and erroneous when compared to the uncontroverted testimony, all of which resulted in prejudicial error.

Without deciding at this juncture whether, when read with the instructions, the verdict form was fatally defective as submitted or as returned, we ask and answer this question:

Was it error to fail to object to the special verdict form *before submission* to the jury?

■ A special-verdict form such as that in issue here will—for the purposes with which we are concerned—be regarded as an instruction. That is, failure to object to a proffered verdict form or to submit a purported proper form carries with it the same penalties as does the failure to object to an instruction or submit a substitute instruction on the law. The failure is governed by Rule 51, W.R.C.P., supra. In *DeWitty v. Decker*, 383 P.2d at 739–740, we observed that, where the appellants failed to take exception to the instructions *"or the form of verdict"* (emphasis added), consideration of those matters would be forever foreclosed under the mandate of Rule 51, W.R.C.P., unless plain error will come to the rescue of the erring party. We therefore hold that the defendant waived any alleged error which he perceived the special-verdict form to contain when, having been given ample opportunity to object, he failed to do so and failed to submit a substitute, unless the oversight can be saved by the doctrine of plain error—a subject which we consider infra.

Were purported inconsistencies which the defendant perceived *the returned verdict* to contain waived when the defendant failed to object when the verdict was returned to the trial court?

It would appear that this question was settled in *DeWitty v. Decker*, supra. In the case at bar, the jury returned the verdict to the trial court with the blanks filled in as required by the form which is published supra. When the jury returned to the courtroom and the verdict was read, plain-

**12.** Plain or fundamental error will be discussed    infra.

tiff's counsel made no objection to the verdict, did not ask to poll the jury, and made no attempt to seek clarification of the jury's verdict. Subsequently, and long after the jury had been dismissed, the appellant moved that the trial court reimpanel the jury so that the alleged inconsistencies of which he complains in this appeal could be addressed. The trial court denied the motion under and by authority of DeWitty and § 1-11-213, W.S.1977, which statute provides:

"If a jury disagrees, or if when the jury is polled a juror answers in the negative, or if the verdict is defective in substance, the jury shall be sent out again for further deliberation and either party may require the jury to be polled by the clerk or court asking each juror if it is his verdict."

In *DeWitty v. Decker*, supra, where the jury awarded substantial special damages but no general damages in a personal-injury suit, we recognized the verdict as irregular and improper but held that the plaintiff was foreclosed from raising the issue once the jury had been released. We interpreted § 1-11-213 as requiring a party to object to the verdict before the jury is discharged. In the DeWitty opinion we said:

" * * * When the jury returned its verdict in open court it was as evident then, as it is now, that it was an irregular and improper verdict. But under our practice, that was not necessarily fatal to the proceedings. Under the provisions of § 1-132, W.S.1957 [now § 1-11-213, W.S. 1977], a verdict that is 'defective in matter of substance' (which the verdict here was) may be corrected by the jury itself on further deliberation. If necessary, the court may assist the jury by submitting additional instructions. See 89 C.J.S. Trial § 567b, p. 337. Such procedure, like other rules of procedure, is designed for orderly and expeditious conduct of litigation and is particularly directed at minimizing the necessity for additional trials.

\* \* \* \* \* \*

"Some authority is found to the contrary * * *, but having in mind the plain purpose of our statute to afford a jury the right to correct its own mistakes, our previous pronouncement in the Innes case [*Innes v. Hay*, 28 Wyo. 274, 203 P. 1091 (1922)], and the convincing authority from other jurisdictions, we do not think it harsh or unreasonable to require a litigant, when an opportunity is afforded during the trial, timely to bring a matter such as here to the attention of the trial court in order that it might be corrected, and failing in this that he shall not be heard here to complain. To hold otherwise would seem unfair to the jury, to the trial court, and to the other litigants, to say nothing of the unnecessary loss of time and expense." 383 P.2d at 738-740.

Accord: *Caterpillar Tractor Company v. Donahue*, Wyo., 674 P.2d 1276 (1983); *Energy Transportation Systems, Inc. v. Mackey*, Wyo., 650 P.2d 1152 (1982); *Crown Cork & Seal Company v. Admiral Beverage Corp.*, Wyo., 638 P.2d 1272 (1982); *Pure Gas and Chemical Company v. Cook*, Wyo., 526 P.2d 986 (1974).

As recently as *Anderson v. Foothill Industrial Bank*, Wyo., 674 P.2d 232 (1984), we reiterated the rule of *DeWitty* when we said:

"Appellants argue that the award of damages to them was inconsistent with a jury finding that the loan was not a consumer loan. Before appellate relief can be sought on this basis, the contentions must be brought to the attention of the trial court before the jury is discharged. Appellants did not do so. It is a well established proposition in this state that any objection to a claimed inconsistency of a jury verdict must be objected to before the jury is discharged, so that the jury can be further instructed and can correct any deficiencies. *Crown Cork & Seal Company, Inc. v. Admiral Beverage Corp.*, Wyo., 638 P.2d 1272, 1274 (1982); *Pure Gas and Chemical Company v. Cook*, Wyo., 526 P.2d 986, 988-989 (1974); *Smith v. Blair*, Wyo., 521 P.2d 581 (1974); *DeWitty v. Decker*,

Wyo., 383 P.2d 734, 738–740 (1963)." 674 P.2d at 236.

There can be no doubt but that the appellant's failure to seek to correct any substantive defect in the special verdict when it was returned to the trial court was a waiver of his right to do so and that he may not now be heard to complain unless the doctrine of plain error will come to appellant's rescue—a subject we discuss infra. *DeWitty v. Decker*, supra. See also *Innes v. Hay*, 28 Wyo. 274, 203 P.2d 1091, 1093 (1922); and see *Neal v. Wailes*, Wyo., 346 P.2d 132, 135 (1959).

*Plain Error and the Instructions, Including the Special Verdict And the Verdict as Returned*

■ Rule 7.05, W.R.A.P. states the plain-error doctrine:

"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

In order to invoke the plain-error rule, it is necessary to show

" * * * (1) that the record reflects clear and unequivocally the fact complained of; (2) that the facts prove a transgression of a clear rule of law; (3) that the error affects a substantial right of the accused; and (4) that the defendant has been materially prejudiced by that violation." *Westmark v. State*, Wyo., 693 P.2d 220, 224 (1984).

Notwithstanding the fact that the appellant failed to object to instructions (including the verdict form), or, in the alternative, to offer substitutes therefor, and even though he failed to call to the court's attention perceived substantive defects in the returned verdict prior to the jury's discharge, it is Mr. Goggins' contention that the trial court committed fundamental and prejudicial error in submitting confusing instructions and a faulty special-verdict form, and in receiving an irregular and inconsistent verdict.[13]

We have, in the past, recognized our authority under the plain-error doctrine to set aside an improper verdict which resulted from the issuance of defective instructions to which no objections were lodged. *Gore v. State*, Wyo., 627 P.2d 1384, 1387–1389 (1981); *Cullin v. State*, Wyo., 565 P.2d 445, 454 (1977). In *Gore v. State*, we discussed the reason for adhering to this rule:

"One important reason for invoking the plain-error doctrine when reviewing jury instructions which were not objected to during the trial, is that jury instructions are written with the particular facts and theories of each case in mind. The judge, with the advice and assistance of the attorneys in the case, attempts to tailor the instructions so that they help the jury develop a clear understanding of how the facts are to be determined under the applicable law of the case. The problems the jury may have with the applicable law will differ from case to case and therefore the instructions appropriate to each case may also differ. In many cases, any one of several instructions may be legally correct. It is the duty of the attorneys in each case to determine which legally acceptable instruction best presents the client's case. Neither the judge, nor the appellate court, has the appropriate perspective to make such a decision. Even if they did understand the case better than the attorney presenting it, their role prohibits them from urging one instruction over another providing both are legally sound. *Thus, unless an instruction can be said to have plainly caused a fundamental prejudice to the defendant's legal rights, we will not overturn it on appeal unless it was objected to during the trial and a proper instruction was offered in its place.*" (Emphasis added.) 627 P.2d at 1388–1389.

---

**13.** We will hold that the returned jury verdict was inconsistent on its face when compared to the uncontroverted facts and, arguendo, assume that it is inconsistent and irregular as returned, even though the appellant cites no authority which holds that a verdict which is returned, as was the verdict in the case at bar, is an irregular and improper verdict on its face.

In *DeWitty v. Decker*, supra, where jury misconduct was alleged, we held that in a situation where the complaining party failed to take exception to either the instructions or the form of verdict tendered or returned, review would ordinarily be foreclosed by Rule 51, W.R.C.P. However, we noted this following exception:

" * * * However, where as here, a charge of misconduct on the part of the jury is made on the issue of damages and it is apparent that the instructions bear a direct relationship to the charge, it is appropriate that cognizance be taken of the entire matter." 383 P.2d at 737. " * * * [W]e are not convinced that such irregularity and impropriety in the verdict confer just cause to set it aside * *." 383 P.2d at 736.

In *Borzea v. Anselmi*, 71 Wyo. 348, 258 P.2d 796, 806 (1952), we said:

" * * * It is the general rule that a party cannot complain of an instruction to which no exception is taken. * * * *That rule should apply in this case, unless perchance the error complained of is vital.*" (Emphasis added.)

In *Cervelli v. Graves*, Wyo., 661 P.2d 1032, 1036 (1983), where proper objections to the instructions were lodged, we held that the giving of confusing and misleading instructions on applicable principles of law constitutes prejudicial error warranting reversal, when we said:

"In reviewing alleged errors in jury instructions, a finding of error is not alone sufficient to reverse; prejudicial error must be found. *Walton v. Texasgulf, Inc.*, Wyo., 634 P.2d 908 (1981). Prejudicial error is never presumed; it must be established by the parties. *Pure Gas and Chemical Company v. Cook*, supra. If it is established that an instruction or instructions had a tendency to confuse or mislead the jury with respect to the applicable principles of law, reversal is proper. 9 Wright & Miller, Federal Practice and Procedure: Civil § 2558, p. 668 (1971); see also, *Marken v. Empire Drilling Company*, 75 Wyo. 121, 293 P.2d 406 (1956)."

We seek, then, to discover whether the instructions together with the special verdict as given and returned constitute plain error warranting reversal.

*There is an Inconsistent Verdict In This Case And One Which is Impossible to Reconcile With Uncontested Witness Testimony*

■ At the outset, it is very difficult for this court to see how Goggins could be assaulted by a blow to the head which is *not* a proximate cause of *any* of the injuries of which he complains. Perhaps some sort of ethereal, hypothetical fantasy could be structured whereby it could be envisioned that a person could receive a blow and *no* injury, but it is hard for us to imagine. Therefore, as in *DeWitty*, the verdict of the jury may, for our purposes, be regarded as inconsistent and improper on its face. Furthermore, it is impossible for us to reconcile the jury's findings that there was an assault and battery committed by Harwood against Goggins and that the assault was not "a proximate cause of the injuries," with the testimony of the treating doctors who testified *without conflict* that Goggins in fact received injury— i.e., abrasions, minor ear lacerations and headache resulting in the necessity to prescribe and purchase medication. In other words, logic does not permit a conclusion that the jury could find the fact of the assault but no injury when the record stands uncontradicted for the proposition that injury did in fact result from the assault and battery. This caused the verdict to be "improper and irregular" on its face in the sense that it was incompatible and irreconcilable with the evidence in the case.

*The Effect of an Inconsistent And Irregular Verdict*

This leaves us with these final two questions for resolution:

1. Assuming, arguendo, that the jury verdict was improper and irregular, was the impropriety brought on by erroneous instructions interacting with an errone-

ous jury-verdict form in a way which amounted to plain error?

2. If the answer to question No. 1 is in the negative, does the concept of plain error come to the rescue of appellant even if it is assumed—as was the situation in DeWitty—that the verdict, when returned, was improper and irregular?

### Question No. 1 Resolved

■ As we have said, standing by themselves, we do not find instructions 3, 6, 11, 12, 13 or 9 to misstate the law. Mostly, they are taken from the Wyoming Pattern Jury Instructions, where they are found to be accurate and well fortified with relevant and forceful authority. The question is whether they conspire to constitute plain error when read with the special jury form and, precisely, the problem has to do with whether they violate a clear, unequivocal rule of law upon the issue of proximate cause.

In this respect, the jury found (1) Harwood committed an assault and battery, and (2) the assault and battery was not a proximate cause of the injuries sustained by Goggins.

Up to this point, the verdict form, taken together with the other instructions and particularly the ones having to do with proximate cause, could not be said to be misleading or confusing. Granting the returned verdict to be inconsistent and irregular for purposes of this decision, nevertheless the verdict form and the instructions, as offered, to this juncture at least, are not misleading or confusing and therefore cannot be said to have brought on the irregular verdict.

Appellant argues that the jury should have been told that if they answered in the negative to either interrogatory No. 1 (Was there an assault and battery?) or interrogatory No. 1A (Was the assault and battery a proximate cause of injury?), this was the end of the matter and damages could not be awarded. But counsel for appellant does not point out why this failure to so

instruct in any way misled or confused the jury, and we are unable to see how it did.

We come, then, to interrogatory No. 3 as contained in the verdict form: [14]

"Without considering your answers to the Questions above, what total amount of damages do you award to fairly compensate the Plaintiff, Jack E. Goggins, for his alleged injuries:

"One Hundred Thousand
"ANSWER $100,000.00"

■ The appellant frames his objection to this interrogatory as follows:

"To make matters even worse, the Court advised the jury in Question 3: *'Without considering your answers to the questions above,* what total amount of damages do you award to fairly compensate the plaintiff, Jack E. Goggins, for his injuries.' This directive gave the jury the clear impression that the questions concerning whether or not there was an assault and battery, and whether or not there was 'proximate cause', was not to be considered by the jury in determining the question of damages.

"On the other hand, the lower court told the jury in Instruction No. 6 * * * that Goggins had the burden of proving that there was an assault and battery, that the assault and battery by the defendant was the 'proximate cause' of the injury and damage to the plaintiff, and that the plaintiff suffered damages. The matter of 'cause' was referred to in various ways throughout the court's instruction as being a necessary element. But on the other hand, the lower court advised the jury in the verdict form that it need not consider the question of 'cause' in deciding to award damages. What other interpretation can one give to the 'Special Verdict Form'? * * *

"The 'Special Verdict Form' given to the Jury by the lower court was confusing and misleading on the matter of 'cause'. In truth, the form actually contradicted

---

**14.** Interrogatory No. 4, having to do with wilful and wanton misconduct, is not brought into issue by the appellant, and so it will not be a part of our consideration in this opinion.

the law incorrectly spelled out by the court in Instruction No. 6 [15] and other instructions relating to the question of cause." (Emphasis added.)

We cannot find that interrogatory No. 3 conflicts or is materially inconsistent with the proximate-cause instructions in a way which constitutes plain error.

For us, interrogatory No. 3 does not mislead the jury concerning the law of proximate cause and the burden of proving it. Instruction No. 6 tells the jury that, in order for plaintiff to recover, he must prove the fact of the assault and battery and that it was the proximate cause of injury and damage. The interrogatory in question simply asks the jury to focus on damages without taking into consideration whether they believed there was in fact an assault and whether, if there was, it was a proximate cause of the injuries complained of.

It is relevant to observe here that, besides the minor abrasions and modest medical bills evolving from the assault and battery, with respect to which the proof was *not* in conflict, the plaintiff alleged extensive permanent injury the proof of which *was* in conflict. We need not second-guess the jury to deduct that it might well have believed that the battery took place but that the "alleged" (as that word appears in interrogatory No. 3) injuries did not result therefrom—at least within the context of the proof of the case where nearly all of the injury focus was upon brain damage, epilepsy and permanent ear injury, and that, therefore, the minor abrasions were overlooked and not considered within the context of the interrogatory. Even so, and for purposes of this decision conceding this impropriety, it does not follow, for us at least, that the instructions taken together with the special-verdict form caused the irregularity.

There is no inherent error in telling the jury what plaintiff's burden of proof is and that it must decide whether plaintiff's injuries were caused by the alleged assault and battery and then instructing the jury to assess damages without regard to its findings concerning the fact of the assault and whether or not it proximately caused injury. This is done all the time in comparative-negligence cases (see § 1-1-109, W.S. 1977) where the liability of both parties is in issue. In the case at bar, the appellee does not charge the plaintiff with fault, and therefore it was unnecessary to compare negligence; [16] however, the fact remains that juries are consistently asked to compare fault having first been instructed on proximate cause—and then, without regard to the fault of the parties, are requested to assess the plaintiff's damages. This established and accepted procedure tells us that this process does not violate the substantive law in a way that would indicate error—to say nothing of plain error. The comparative-negligence analogy becomes relevant and apropos when we consider the Wyoming Civil Pattern Jury Instructions. These instructions include No. 10.02, "Comparative negligence—Verdict form—Single parties," which provides:

"We, the jury, present the following answers to the questions submitted by the court:

"1. Considering all of the fault at one hundred percent, what percentage of the total fault is attributable to each of the following persons?

" _____ (Plaintiff) . . . . . . . . . . . (0% to 100%) __%

" _____ (Defendant) . . . . . . . . . (0% to 100%) __%

"Total 100%

---

15. This instruction defines assault and it also defines battery. The appellant's reference to the fact that it was "incorrectly spelled out," without citations, is insufficient objection to warrant a response from this court. *Osborn v. Manning*, Wyo., 685 P.2d 1121 (1984).

16. Harwood Enterprises, a Wyoming corporation, had been dismissed during the proceedings for the reason that plaintiff had failed to prove the liability of this defendant.

"2. Without considering the percentage of fault found in question one, what total amount of damages do you find was sustained by?

"_____(Plaintiff) ....... $_____

"_____(Defendant, if applicable) .... $_____

"_____
Jury Foreman"

(Emphasis added.)

Therefore, it can be seen that jurors are often asked to assess damages without associating them to or considering them with the fault of the parties, and often the result of this exercise results in the jury finding no fault and yet the damages are nonetheless inserted. All that this amounts to is the jury finding—as to any given actor—that he is not guilty of fault (for whatever reason—i.e., there may have been no proximate cause), yet the jury must still go on to assess damages and, in many instances, they are indeed found to be substantial. This has not been found to be a confusing task for juries.

■ In point of fact, in a comparative-negligence case, the jury having been informed of the consequences of its action as the judge is required to do when requested (see §· 1–1–109(b)(iii), W.S.1977), and having found that the plaintiff was guilty of greater fault than a defendant tortfeasor otherwise liable, would always find itself in a position where it was assessing damages with the full knowledge that the particular defendant will not be responsible for them.[17] That is what was done here. Having been informed that a plaintiff cannot hold the defendant liable where his negligence was not the cause of the injury, the jury simply found no proximate cause and then—presumably—went on to follow its instructions by fixing damages for the "alleged" (as that word is used in interrogatory No. 3) epilepsy, brain and permanent ear injury, on the theory that even though the defendant would not be liable for their payment, damages were, for whatever reason, required to be assessed.

■ In concluding this point, we observe that the appellant has not referred us to a single authority which holds that the giving of a special verdict such as that which is in contest here is error. We have not been referred to a single case which holds any of the proximate-cause instructions—or any other given instructions—to misstate the law, and we have not been cited to any authority which holds the combination of proximate-cause instructions together with a special verdict such as the one that was given here to have caused juries to be misled and confused. Even though we have discussed the point in some detail, the rule of law is that this court will not consider alleged error that is supported only by perfunctory argument and no authority. *Kincheloe v. Milatzo*, Wyo., 678 P.2d 855 (1984); *Barnette v. Doyle*, Wyo., 622 P.2d 1349 (1981).

We hold, then, that even though the jury rendered an inconsistent verdict it was not brought on by alleged improper instructions interacting with the special-verdict form.

*Question No. 2 Resolved*

■ Lastly, we address the question which asks whether the doctrine of plain error is applicable to overcome the failure of the defendant to object to an irregular and improper verdict. We hold that *DeW-*

17. We assume that juries follow their instructions and understand them. *Hursh Agency, Inc. v. Wigwam Homes, Inc.*, Wyo., 664 P.2d 27, 36 (1983); *Barnette v. Doyle*, Wyo., 622 P.2d 1349, 1365 (1981); *State Highway Commission v. Peters*, Wyo., 416 P.2d 390, 396 (1966).

*itty v. Decker,* supra, dictates a negative answer to this question.

As has been noted, the verdict, as returned, in *DeWitty,* was irregular and improper in that the jury awarded special but no general damages. In the case at bar, the jury found an assault and battery but found that no part of the injury suffered by appellant was proximately caused by the blow—and, for purposes of this decision, we have said this was an irregular and improper verdict. There can be no doubt but that—in both *DeWitty* and the case at bar—the appellant's "substantial right[s]" were affected. *Westmark v. State,* supra. That is, as in·*DeWitty,* if the jury in the case at bar, having found the fact of the assault, were to go on and find that the blow was the proximate cause of at least some of plaintiff's injury and damage, the jury would then have been compelled to assess at least some damages and, therefore, substantial rights of this appellant would be affected. In *DeWitty,* substantial rights of the appellant were affected because, having found really substantial special damages flowing from the negligence of the defendant-appellee, the jury assessed no general damages, and yet we held that because of the opportunity to correct the verdict offered by § 1–11–213, W.S.1977, the complaining party will be held to have waived the error, notwithstanding its degree of impropriety and irregularity.[18]

In the case at bar, no matter how obvious the irregularity, the right to complain of this verdict was, under *DeWitty v. Decker,* supra, waived and the appellant cannot now be successfully heard to complain.

Affirmed.

THOMAS, Chief Justice, specially concurring.

I do not quarrel with the result which is reached in the majority opinion in this instance. It does seem to me, however, that we hold nothing more than:

---

**18.** This opinion does not purport to cover jury misconduct. Jury misconduct was not alleged

---

1. There was no error with respect to the instructions given the jury.

2. The verdict form which was submitted to the jury was not erroneous.

3. If the verdict was inconsistent with the instructions of the court the appellant is charged with the duty of raising that question at the trial level before the jury's discharge pursuant to *DeWitty v. Decker,* Wyo., 383 P.2d 734 (1963).

Consequently, since no error is found with respect to the instructions or the jury verdict form, plain error is not a proposition which the appellant can rely upon. Furthermore, the proposition of plain error is antithetical to the waiver concept found in *DeWitty v. Decker,* supra, and the two principles cannot be invoked in the same case.

by the appellant or considered by the trial court and, thus, is not in issue here.